## THOMAS F. CAVANAUGH *vs.* MARY H. CONWAY.

### JULY 2, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Brokers.   Commissions.*

A broker authorized to sell property at the minimum price of $7,000, does not perform his contract by procuring a customer who agrees to buy the property for said sum or to forfeit a deposit of $100 as liquidated damages.

*(2)   Contracts.   Brokers.   Liquidated Damages.   Penalty.*

An agreement for the sale of land provided that the customer had paid to the owner "the sum of $100, which sum in case this agreement is carried out shall be applied in reduction of $7,000 cash payment above stipulated to be paid; but in case said (customer) shall fail to perform her part thereof, then this sum shall be forfeited and belong to said (owner) as and for liquidated damages."

*Held,* that the elements of doubt as to the amount of damages which might be sustained; of the difficulty of ascertaining the precise amount of damages; of the reasonableness of the amount to be paid; of the use of the term "liquidated damages" and of the actual deposit of the money warranted the construction that the contract provided for liquidated damages and not for a penalty.

*(3)   Penalty.   Liquidated Damages.*

In the construction of a contract to determine whether a penalty or liquidated damages was contemplated the fact to be determined is, whether the party is restricted from doing a particular act, although if he do it a payment is reserved or whether the party may do the act, on payment of what is agreed upon as an equivalent.

*(4)   Contracts.*

A party makes a contract his own by signing it and it is immaterial who may have drafted it.

*(5)   Contracts.   Offer and Acceptance.*

Where an offer is accepted with a condition attached the conditional acceptance amounts to a counter-offer which in turn requires acceptance

ASSUMPSIT. Heard on exception of plaintiff and over-
ruled.

JOHNSON, C. J. This is an action in assumpsit brought
by a real estate broker to recover a commission. The case
was tried before Mr. Justice Barrows and a jury, in the
Superior Court, January 19, 1914, and after the presentation
of plaintiff's case the judge granted the defendant's motion
to nonsuit the plaintiff. The case is now before this court
upon plaintiff's bill of exceptions, the exception taken to the
granting of the nonsuit being the sole exception.

From the evidence presented it appeared that the defend-
ant in March, 1913, placed in the hands of the plaintiff,
who was a real estate broker, certain property on Highland
street in the city of Woonsocket, to be sold at the minimum
price of seven thousand dollars, the plaintiff to receive as
his commission for selling the property two per centum of
the selling price. On August 29, 1913, the plaintiff called
at the defendant's home, carrying with him a written con-
tract signed by one Margaret Powers setting forth the terms
upon which she was willing to purchase the property, and
one hundred dollars for deposit, according to one of the pro-
visions thereof, and announced to the defendant that he had
secured a purchaser, said Margaret Powers, at the minimum
price fixed by the defendant, viz.: seven thousand dollars.
After some discussion the plaintiff said to the defendant,
"'I have got a paper here drawn up, Mrs. Conway, the con-
ditions of sale, when the balance will be paid, and to pay one
hundred (100) dollars down, and if you will sign it, and when
Mike (defendant's husband) comes home if he will sign it,
I will have the balance here between now and the 10th day of
September." Shortly after this the defendant's husband,
Michael Conway, reached home, when the plaintiff announced
to him that he had a purchaser and continued, "I have got
one hundred (100) dollars, Mike, to bind the bargain and here
is the conditions of sale and everything, and the balance to be

paid between now and the 10th day of September, and if you and your wife will sign these I will give you the one hundred (100) dollars and get ready to get the deeds ready and every-- thing else."

The defendant was not quite satisfied with the price offered and at this time refused to sign the document or to accept the deposit, without giving any reason therefor, and announced that she and her husband would call at the plain- tiff's home that same evening before 9 o'clock and decide the matter. Instead of calling as promised, the husband of the defendant telephoned the plaintiff that they would not be down that night, and said "Nothing doing anyway: she is set, she won't give in yet." The next evening the defendant, through her husband, notified the plaintiff finally that they would not accept the Powers' offer and sign the agreement, and that she had sold it before plaintiff came to the house the day before.

The agreement which the plaintiff proffered for the defend- ant's signature with the deposit of one hundred (100) dollars was as follows: "This agreement made and executed this 29th day of August, A. D. 1913, between Mary H. Con- way of Woonsocket, in the County of Providence and State of Rhode Island, party of the first part and Margaret Powers of said Woonsocket party of the second part, witnesseth:—

"First, the said Mary H. Conway, in consideration of seven thousand ($7,000.00) dollars to be paid as is herein mentioned, doth agree with said Margaret Powers that she, said Mary H. Conway, shall, on or before the tenth day of September, A. D. 1913, at the office of John J. Heffernan, Hope Building, by a good and sufficient warranty deed, with release of curtesy at her own cost duly made and executed, grant, convey and confirm to said Margaret Powers a certain lot of land with all the buildings and improvements thereon, situated at No. 93 and 105 Highland street in said Woon- socket.

"And the said Margaret Powers has paid to the said Mary H. Conway the sum of one hundred ($100.00) dollars, the

receipt whereof is hereby acknowledged by the said Mary H. Conway, which sum, in case this agreement is fully carried out, shall be applied in reduction of seven thousand ($7,000.00) dollars cash payment above stipulated to be paid; but in case of said Mary H. Conway performing or offering to perform fully her part of this agreement, if said Margaret Powers shall neglect, fail or refuse to perform her part thereof, then this said sum of one hundred ($100.00) dollars shall be forfeited and belong to said Mary H. Conway as and for liquidated damages.

"And the said Margaret Powers, for herself, her heirs, executors and administrators, doth agree to and with said said Mary H. Conway, her heirs and assigns, that she, said Margaret Powers on the execution and delivery of said conveyance, will pay to said Mary H. Conway, her executors or administrators, the balance of said sum of seven thousand ($7,000.00) dollars, to wit, sixty-nine hundred ($6,900.00) dollars.

"To the performance of which agreements, the said Mary H. Conway and Margaret Powers do hereby respectively bind themselves, their heirs, executors and administrators, each to the other.

"In witness whereof, the parties have hereunto interchangeably set their hands and seals at said Woonsocket, the day and year before written.

"Signed and delivered

"in presence of

"THOMAS F. CAVANAUGH.            "MARGARET POWERS."

The court nonsuited the plaintiff on the ground that the contract offered to the defendant for her signature, upon signing which she was to obtain the $100.00 deposit, was not such a contract as the plaintiff was authorized to negotiate for her, stating said ground as follows:  "The terms on which Mr. Cavanaugh was authorized to procure a purchaser was that the property should be sold absolutely for $7,000.00 and, as I read this agreement which Mr. Cavanaugh offered

to Mrs. Conway to sign, which has been introduced in evidence and signed by Mrs. Powers, it was not such a production of a purchaser. The agreement, it seems to me, does give to Mrs. Powers the right to either buy at $7,000.00 or to pay $100.00 as liquidated damages if she fails to buy. Any other construction avoids entirely a consideration of that word 'liquidated.'"

Did the plaintiff bring himself within the terms of the defendant's offer by the production of the contract signed by Margaret Powers presented to the defendant by the plaintiff?

The authorities are agreed that the broker accepts the offer and brings himself within its terms by the production of a customer who is ready, willing and able to purchase. The customer, however, must be ready and willing to complete the purchase on the terms prescribed by the seller and assented to by the broker. In *Fraser* v. *Wyckoff*, 63 N. Y. 445, 448, the court said: "A broker for the sale of real estate is entitled to his commissions when, in the language of the cases, he 'is the procuring cause of the sale;' that is, when he has found a purchaser and brought him to his employer and a contract is made between them for the sale of the property, or the purchaser is ready to purchase and the seller refuses or is unable to consummate the sale. (*Knapp* v. *Wallace*, 41 N. Y., 477; *Martin* v. *Silliman*, 53 *id.*, 615; *Lloyd* v. *Matthews*, 51 *id.*, 124.) He is not, however, entitled to commissions until he has performed the undertaking assumed by him. Whatever may be the terms and conditions upon which his right to compensation depends, they must be performed, as a condition precedent to a right of action for a commission. A broker to negotiate the sale of an estate is not entitled to his commission until he finds a purchaser ready and willing to complete a purchase on the terms prescribed by the seller and assented to by the broker. (*Moses* v. *Bierling*, 31 N. Y., 462; *McGavock* v. *Woodlief*, 20 How. (U. S.), 221.)"

It is true that the agreement says that, "the said Margaret Powers doth agree to and with said Mary H. Conway that

she on the execution and delivery of said conveyance will pay to said Mary H. Conway the balance of said sum of seven thousand ($7,000.00) dollars;" but the agreement also provides for the deposit of one hundred dollars by the said Margaret Powers with the defendant "which sum, in case this agreement is fully carried out, shall be applied in reduction of the seven thousand ($7,000.00) dollars cash payment above stipulated to be paid; but in case of said Mary H. Conway performing or offering to perform fully her part of this agreement, if said Margaret Powers shall neglect, fail or refuse to perform her part thereof, then said sum of one hundred (100) dollars shall be forfeited and belong to said Mary H. Conway as and for liquidated damages."

This agreement, therefore, is an agreement to purchase the property for the minimum sum for which the defendant offered to sell, but it limits the liability of Margaret Powers, if she "shall neglect, fail or refuse to perform her part thereof" to the one hundred (100) dollars deposited which is to be retained by her "as and for liquidated damages."

The rule is stated in 19 Cyc. pp. 251–252–253 as follows: "Nor is a broker entitled to a commission where he procures a contract between the parties subject to a condition not authorized by the terms of his employment. So if a broker employed to effect a transaction merely secures from a customer a contract by which the latter becomes entitled to enter into the transaction at his option, the broker is not entitled to a commission. Thus a broker employed to sell property is not entitled to compensation for procuring a customer who takes an option on the property, as where the customer enters into a contract by the terms of which he may at his option either accept the property or forfeit the earnest money or such partial payments as he may have made up to the time of his election; and the rule is the same where the contract provides that in case either one party or the other shall default in carrying out the contract he shall pay a stipulated sum as liquidated damages."

In *Lawrence* v. *Rhodes*, 188 Ill. 96, a contract between seller and purchaser was executed and $1,500 was paid in cash at the time of said execution. The contract contained, among other things, the provision: "In case said second party shall not, upon tender of proper deeds of conveyance to him and of the abstract above described, make the payment of the balance of the cash payment, to wit, ten thousand five hundred dollars ($10,500), and duly execute, acknowledge and deliver to first party the notes and trust deed for the deferred portions of the purchase price hereof, as herein provided, then and in that case this agreement shall be null and void, and the earnest money paid hereon may be retained by the first party as payment in full of all damages for non-performance hereof by said second party." The court said, p. 100: "By the terms of the contract entered into by Gross with appellant, Gross did not purchase the premises and a sale thereof was not thereby effected. By such contract Gross agreed to purchase the premises at $800 per acre or to forfeit $1,500, it being optional with him whether he would buy or forfeit the $1,500. If he saw fit to forfeit the $1,500, as he had the option to do, no sale was effected and no compensation earned by appellee. In order for appellee to comply with his undertaking so as to entitle him to compensation, he was bound to produce a purchaser who was willing to enter into a valid, binding and enforceable contract for the purchase of the premises, and not one who was only willing to take an option thereon."

In *Zeidler* v. *Walker*, 41 Mo. App. 118, the contract provided that in case of failure of purchaser to make the payments provided for in the contract made between the seller and purchaser, when they respectively should fall due, "all previous payments shall be forfeited to said party of the first part as agreed and liquidated damages." The court said "that was not a contract to purchase the real estate, unconditionally or absolutely, but was a mere option, as was held in a similar case decided by this court." See, also, *Aigler* v. *Place*, 51 Kansas, 718; *Kimberly* v. *Henderson*, 29 Md. 512.

(2)    The plaintiff argues, however, that the $100, which, by
the terms of the contract, submitted by plaintiff to defendant,
if said Margaret Powers shall neglect, fail or refuse to per-
form her part thereof "shall be forfeited and belong to said
Mary H. Conway as and for liquidated damages," is not
liquidated damages, but a penalty; that, if the defendant had
signed this agreement, and Mrs. Powers had refused to per-
form, the defendant would have had a perfect remedy by a
bill for specific performance; and that, therefore, the plain-
tiff produced a purchaser within the terms of the offer made
to him by the defendant.

Is said stipulation a provision for liquidated damages,
or is it a penalty?

In Pomeroy's Eq. Juris., § 440, the author says:    "The
fourth instance to be mentioned of a stipulation which is
not a penalty within the scope and meaning of the equitable
doctrine is that for 'liquidated damages.'    If the stipulation
is one properly for liquidated damages, and not for a penalty,
equity will not interfere with its enforcement, but if the case
was one coming within the equitable jurisdiction, it would be
treated as binding, and carried into effect by a court of equity.
In general, where the contract is for the performance or non-
performance of some act other than the mere payment of
money, and there is no certain measure of the injury which
will be sustained from a violation of the agreement, the
parties may, by an express clause inserted for that purpose,
fix upon a sum in the nature of liquidated damages which
shall be payable as a compensation for such violation.  The
question whether a sum thus stipulated to be paid is a
'penalty' or is 'liquidated damages' is often difficult to
determine.    It depends, however, upon a construction of the
whole instrument, upon the real intention of the parties as
ascertained from all the language which they have used, from
the nature of the act to be performed, or not to be performed,
from the consequences which naturally result from a viola-
tion of the contract, and from the circumstances generally
surrounding the transaction.    It has been repeatedly held

that the words 'penalty' or 'liquidated' damages, if actually used in the instrument, are not at all conclusive as to the character of the stipulation. If upon the whole agreement the court can see that the sum stipulated to be paid was intended as a penalty, the designation of it by the parties as 'liquidated damages' will not prevent this construction; if, on the other hand, the intent is plain that the sum shall be 'liquidated damages,' it will not be treated as a penalty because the parties have called it by that name. It is well settled, however, that if the intent is at all doubtful, the tendency of the courts is in favor of the interpretation which makes the sum a penalty. The mere largeness of the sum fixed upon for the doing or not doing a particular act—that is, the fact of its being disproportioned in amount to the damage which results therefrom—will not of itself be a sufficient reason for holding it to be a penalty."

Among the many cases supporting the text are: *Williams* v. *Green*, 14 Ark. 315; *Holmes* v. *Holmes*, 12 Barb. 137; *Madler* v. *Silverstone*, 55 Wash. 159; *Sanders* v. *Carter*, 91 Ga. 450; *Scofield* v. *Tompkins*, 95 Ill. 190; *Hurd* v. *Dunsmore*, 63 N. H. 171; *Jaquith* v. *Hudson*, 5 Mich. 123; *Calbeck* v. *Ford*, 140 Mich. 48; *Fasler* v. *Beard*, 39 Minn. 32; *Chase* v. *Allen*, 13 Gray, 42; *Streeper* v. *Williams*, 48 Pa. St. 450; *Gowen* v. *Gerrish*, 15 Me. 273; *Dwinel* v. *Brown*, 54 Me. 468; *Sun Printing & Pub. Asso.* v. *Moore*, 183 U. S. 642; *Chamberlain* v. *Bagley*, 11 N. H. 234; *Durst* v. *Swift*, 11 Tex. 273; *Yenner* v. *Hammond*, 36 Wis. 277; *Hahn* v. *Concordia Soc'y of Baltimore*, 42 Md. 460.

"An actual deposit by a party to a contract, pursuant to a provision therefor and a stipulation that the amount shall be paid to or retained by the other party in case of default, is held, as a rule, to import an intent to liquidate the damages and will be so enforced." 19 Am. & Eng. Encyc. of Law, 413; *Catton* v. *Bennett*, 51 L. T. N. S. 70; *Lea* v. *Whitaker*, L. R. 8 C. P. 70; *Wallis* v. *Smith*, 52 L. J. Ch. 145, 21 Ch. Div. 243; *Sanders* v. *Carter*, 91 Ga. 450; *Sanford* v. *Belle Plaine First Nat. Bank*, 94 Iowa, 680; *Woodbury* v. *Turner Mfg. Co.*

96 Ky. 459. "Where there is a payment by one of the two contracting parties to the other, stated to be in part payment of the purchase price of consideration of the transaction, with the provision that it shall be retained by the party to whom it is paid on default of the other to complete the contract, the construction favors the theory that liquidation of the damages was intended." 19 Am. & Eng. Encyc. of Law, 413–4; *Hinton* v. *Sparkes*, L. R. 3 C. P. 161; *Allison* v. *Dunwody*, 100 Ga. 51; *Havens* v. *Patterson*, 43 N. Y. 218; *Lawrence* v. *Miller*, 86 N. Y. 131; *Haynes* v. *Hart*, 42 Barb. (N. Y.) 58; *Ketchum* v. *Evertson*, 13 Johns. (N. Y.) 359.

(3)    The actual damages arising from the breach of a contract for the purchase or sale of real estate have been frequently held to be of such an uncertain and unascertainable nature as to warrant the construction that a sum named to be paid on a breach is liquidated damages and not a penalty. *Allison* v. *Dunwody*, 100 Ga. 51; *Gammon* v. *Howe*, 14 Me. 250; *Morse* v. *Rathburn*, 42 Mo. 594; *Mead* v. *Wheeler*, 13 N. H. 351; *Slosson* v. *Beadle*, 7 Johns. (N. Y.) 72; *Leggett* v. *Mutual L. Ins. Co.*, 50 Barb. (N. Y.) 616; *Talkin* v. *Anderson* (Tex. 1892) 19 S. W. 852.

In support of the claim that the stipulation in the contract provides not for liquidated damages, but for a penalty, plaintiff's counsel cite *Dike* v. *Greene*, 4 R. I. 286, 294, 295, and quote therefrom as follows: "When it once appears that the main purpose of the parties to a contract is, the sale and purchase of an estate, any sum that is named in it to be paid by either in the event of his neglect or refusal to perform his part of the agreement, is construed as a penalty to insure the performance of the contract in the option of *the other* party, and not as constituting the agreement an alternative one, in the sense of giving him the option to perform his contract or to forfeit the penalty."

This excerpt needs to be considered with the context in order to be understood. The cause was heard upon demurrer to a bill for specific performance of a contract for the sale of an estate. The following portion of the headnote will

assist in showing the question upon the consideration of which the language cited, was used: "Where the contract for the sale of an estate, made by letters of proposal and acceptance, at an agreed price, stipulated that a portion of the price was to be taken in an estate of the purchaser 'at an appraisal,' and the contracting parties subsequently submitted in writing the appraisal of the last-named estate to certain persons, and concluded their agreement of submission with these words: 'the party not abiding the decision of the above gentlemen, or any two of them, shall pay the sum of three hundred dollars to the opposite.' Held, upon a bill to enforce the performance of the contract of purchase at the rate for the estate to be taken in payment put upon it by the appraisers, that the above stipulated penalty upon the party who should not abide the appraisal did not render the contract incomplete, or authorize either party, upon payment of the penalty, to withdraw from the same." On pp. 294, 295 and 296, the court said: "The best ground upon which it could be insisted that the submission to appraisal is to be construed as giving to either party an election to disavow the award under it upon the payment of $300, is, that since the having of such an award made was essential to the completion of the contract, and so the terms of the submission were of the substance of the contract, it would be much more easy to construe, in consistency with the spirit of the decisions, the submission to an appraisal as giving the election in question, than it would be to hold the contract to be complete in legal obligation, according to the intent of the parties, without any submission, or any appraisal made under it. Upon this last supposition, the submission and appraisal would not be of the *substance* of the contract; which would consist in the agreement to sell and purchase the Broad street estate for $20,000; the Aborn street estate to be taken in part-payment, at an appraisal made in some mode. Now, if this were the principal object of the parties to the contract, or, that so far as the Aborn street estate of the respondent was concerned, that estate should be taken by the complainants at

an appraisal, without reference to the mode of appraisal, it would be running counter to the principle of all the decided cases bearing upon this subject, to construe the agreement to submit to an appraisal by particular persons, as an alternative agreement, giving either party the right to get rid of the award by paying to the other the sum of $300. It would be to suppose that the parties intended, in a minor and subsidiary branch of their agreement, to reserve to each other the power indefinitely to delay the attainment of, and thus, it might be practically to defeat, considering the subject of the contract, its principal purpose. This would be the very reverse of judicial reasoning upon such a matter for the principle upon which the cases turn is, that when once it appears that the main purpose of the parties to a contract is, the sale and purchase of an estate, any sum that is named in it to be paid by either in the event of his neglect or refusal to perform his part of the agreement, is construed as a penalty to insure the performance of the contract in the option of *the other* party, and not as constituting the agreement an alternative one, in the sense of giving him the option to perform his contract or to forfeit the penalty. 1 Sugd. Vend. 246, bot. page and cases cited, and n. 1. This has been the rule everywhere, from the case of *Howard* v. *Hopkyns*, 2 Atk. 371, decided by Lord Hardwicke in 1742, to the latest reported decision upon the point in Massachusetts, *Dooley* v. *Watson*, 1 Gray, 414, 416, decided by the Supreme Court of that state in 1854. But it is said that these decisions are all in relation to contracts in which the penalty was affixed to the non-performance of the obligation to convey, and not, as in this, to the obligation to abide by an appraisal, where the execution of the contract must, by its terms, await an appraisal. We apprehend the difference, but hardly, in legal effect, the distinction, in a sense favorable to the case of the respondent. It would be much easier to conceive, looking at the language of the instruments, that the proviso in the articles to convey, to wit, 'that if either side should break the agreement he should pay to the other

£100,' as in *Howard* v. *Hopkyns, supra;* or the bonds, with condition to convey in *Ensign* v. *Kellogg,* 4 Pick. 1, and *Plunkett* v. *The Methodist Episcopal Church in No. Adams* 3 Cush. 561, 566, or the promissory note of the purchaser to pay $100 if he failed to perform his agreement, on the day appointed for its execution, as in *Dooley* v. *Watson, supra,* were intended to render those contracts alternative, than to gather the same intent from the language of this submission. But when looking a little further, we find that in this case, there was an important contract entered into between the parties, by which the respondent was to purchase a dwelling-house, at the price of $20,000, and the complainants were to receive in satisfaction and payment therefor two estates and a large sum of money, all to wait for its execution the appraisement of one of the latter of these estates only, we can hardly suppose, under the long-settled law and well-known practice upon this subject, that the parties intended repeated appraisements, at the option of either, with the expense and indefinite delay attending them. In such a transaction, the stipulated sum might well have been inserted by the parties, according to the reasoning of Lord Hardwicke, in *Howard* v. *Hopkyns, supra,* that they might be paid thereby, if the appraisement fell through, for the trouble, disappointment, and expense to which either might be put, by the neglect, unfaithfulness, or incapacity to perform, of the other. At all events, looking, as Mr. Justice Story says: 'courts of equity, in all cases of this sort,' do look, 'to the *substance* of the transaction, and the *primary* object of the parties,' and finding that this 'requires a specific performance, we must 'treat this penalty as a mere security for its due performance and attainment,' 2 Story's Equity Jurisp. § 715."

Thus we find after reading the discussion by the court that in effect the court simply held that the respondent could not, by paying the penalty provided for in a minor and subsidiary branch of the agreement, viz.: the agreement of submission to an appraisal of an estate to be taken in part payment at an appraisal, defeat the principal purpose of the

contract. The decision was entirely in accord with the authorities. "With respect to the effect of a penalty upon the equitable rights of the parties, while a court of equity will relieve the party who had thus bound himself against a penalty, or will restrain its enforcement against him at law, it will not, on the other hand, permit such party to resist a specific performance of the contract by electing to pay the penalty." 1 Pomeroy, Eq. Juris. § 446. Many cases both in England and this country are cited, including *Dike* v. *Greene, supra,* and the cases cited therein.

In Section 447, Mr. Pomeroy, says: "Where, however, the parties to an agreement have added a provision for the payment, in case of a breach, of a certain sum which is truly liquidated damages, and not a penalty,—in other words, where the contract stipulates for one of two things in the alternative, the doing of certain acts, or the payment of a certain amount of money in lieu thereof,—equity will not interfere to decree a specific performance of the first alternative, but will leave the injured party to his remedy of damages at law. This is one reason among many why courts of equity incline strongly to construe such stipulations as providing for a penalty rather than for liquidated damages."

In *Dike against Greene* the court referred to the stipulation there as "a penalty to insure the performance of the contract in the option of *the other* party and not as constituting the agreement an alternative one, in the sense of giving him the option to perform his contract or to forfeit the penalty." Clearly the court recognized the possibility of such an alternative stipulation. Such stipulations are discussed by Mr. Pomeroy, in Section 437 of the edition of his Equity Jurisprudence referred to, *supra,* where, having in preceding sections discussed penalties in general, he says: "Such being the general test by which to determine the nature of a penalty, there are certain kinds of stipulations not unfrequently inserted in agreements which have been judicially interpreted and held not to be penalties, and therefore not

subject to be relieved against by courts of equity. The nature and effect of these stipulations I shall briefly explain. The first instance is that of a contract by the terms of which the contracting party so binds himself that he is entitled to perform either one of *two* alternative stipulations, at his option; and if he elects to perform one of these alternatives, he promises to pay a certain sum of money, but if he elects to perform the other alternative, then he binds himself to pay a larger sum of money. To state the substance of the agreement in briefer terms, the contracting party may do either of two things, but is to pay higher for one alternative than for the other. In such a case equity regards the stipulation for a larger payment, not as a penalty, but as liquidated damages agreed upon by the parties. It will not relieve the contracting party from the payment of the larger sum, upon his performance of the latter alternative to which such payment is annexed; nor, on the other hand, will it deprive him of his election by compelling him to abstain from performing whichever alternative he may choose to adopt."

To the last two sections quoted from Pomeroy's Equity Juris., many cases are cited, including *French* v. *Macale*, 2 Dru. & War. 274, where Lord St. Leonards states the law as follows: "If a man covenant to abstain from doing a certain act, and agree that if he do it he will pay a sum of money, it would seem that he will be compelled to abstain from doing that act; and just as in the converse case, he cannot elect to break his engagement by paying for his violation of the contract . . . The question for the court to ascertain is, whether the party is restricted by covenant from doing the particular act, although if he do it, a payment is reserved; or whether, according to the true construction of the contract, its meaning is, that the one party shall have a right to do the act, on payment of what is agreed upon as an equivalent."

When in the light of these authorities, we consider the words used by Chief Justice Ames in *Dike* v. *Greene:* "When once it appears that the main purpose of the parties to a

contract is the sale and purchase of an estate, any sum that is named in it to be paid by either in the event of his neglect or refusal to perform his part of the agreement, is construed as a penalty to insure the performance of the contract, in the option of the other party, and not as constituting the agreement an alternative one, in the sense of giving him the opportunity to perform his contract or to forfeit the penalty,'' it is perfectly clear that he was speaking not of a contract to which the parties in the words of Section 447, Pomeroy's Eq. Juris., quoted *supra*, ''have added a provision for the payment, in case of a breach, of a certain sum which is truly liquidated damages, and not a penalty,—in other words, where the contract stipulates for one of two things in the alternative, the doing of certain acts, or the payment of a certain amount of money in lieu thereof,'' but of the contract before him, the *main purpose* of the parties to which was the sale and purchase of an estate, a purpose not qualified by any provision of the parties for the doing of any alternative act in lieu thereof. The language was applicable to the contract before him and not to any other and different contract. The decision does not support the argument that any sum named in a contract for the sale and purchase of real estate, is, under all circumstances, whatever its nature or terms, a penalty against which equity will relieve. The plaintiff, therefore, derives no support from the opinion in that case, for the claim that the defendant in this case could enforce specific performance of the contract presented to her by the plaintiff.

Plaintiff's counsel argue that it was not necessary to produce the written contract, because its production in this case was immaterial. The plaintiff's testimony shows that the only proposition communicated to the defendant by him was that contained in the written agreement signed by Margaret Powers. The written agreement is, therefor, not only material, but essential to the plaintiff's case. Without said agreement no customer willing to purchase at the price fixed by the defendant upon any terms was procured by the plaintiff.

Whether Margaret Powers, notwithstanding her written proposition, would have entered into a different kind of an agreement, is not known and is immaterial in the face of the fact that the written contract contains the only offer to purchase which she made, so far as shown by the evidence.

The plaintiff in his argument claims that the drawing up of the contract, which was signed by Margaret Powers, was the act of the plaintiff acting in a friendly capacity. This was not shown in the evidence. It is immaterial who drafted the contract; Margaret Powers made it her own by signing it.

(4) The plaintiff also argues that it was the duty of the defendant if she was dissatisfied with the offer contained in the writing, herself to have sought Margaret Powers and requested a modification of the written contract. This argument seems to misconceive the whole transaction. The defendant had made an offer to sell her property upon certain terms; this offer was not accepted upon said terms, but was accepted with a condition or limitation; in other words, a counter-offer was made. In this state of facts, the claim is (5) now advanced, apparently that the contract became complete because the defendant did not seek an interview with Margaret Powers and endeavor to procure a modification of her counter-offer. There is no merit in this argument.

The defendant argues that because the plaintiff did not specifically object to the terms of the proposition of Margaret Powers, but rejected it without giving any reason therefor, she thereby approved the form and is estopped now to complain that it was not an acceptance of her offer. This argument misconceives the nature of the transaction. The plaintiff had made an offer of her property for sale upon certain terms. This offer was accepted with a condition attached, never authorized by her. There was therefore no meeting of the minds and the conditional acceptance amounted merely to a counter-offer which must have been accepted in order to make a complete contract. This was never done.

The facts in the case at bar present a case for a construction in favor of liquidated damages. The elements of doubt as to the amount of damages which might be sustained, of the difficulty of ascertaining the precise amount of the damages, of the reasonableness of the amount to be paid or retained, of the use of the term "liquidated damages" and of the actual deposit of the money, which are here combined, are sufficient to justify such a construction.

The contract procured by the plaintiff was not a contract for an absolute sale, but was subject to a condition not authorized by the terms of his employment. Therefore he is not entitled to a commission for the procurement thereof.

The nonsuit was properly granted.

The plaintiff's exception is overruled, and the case is remitted to the Superior Court for the entry of judgment upon the nonsuit.

*John J. Heffernan, James H. Rickard, Jr.,* for plaintiff.
*George W. Greene,* for defendant.