THE HON. WILLIAM L. HOLLOWAY,
THE HON. JOHN HURLY,
THE HON. JOHN A. MATTHEWS,
THE HON. CHARLES H. COOPER,
} Associate Justices.

---

WRIGHT LAND & INVESTMENT CO., RESPONDENT, *v.*
EVEN ET AL., APPELLANTS.

(No. 4,060.)

(Submitted November 13, 1919. Decided December 17, 1919.)

[186 Pac. 681.]

*Real Property—Sales—Brokers—Commissions—Purchase Price
—Default in Payment—Effect—Contracts—Interpretation.*

Real Property—Contract of Sale—Brokers—Commissions.
    1. Where a real estate broker entered into a contract with a land
owner under the terms of which he was made agent "to sell" the
latter's property for a commission, he was not entitled thereto upon
the mere production of a buyer who was financially irresponsible,
but could insist on payment only when the buyer furnished was
ready, willing and able to complete the purchase according to the
terms agreed upon.

Same—Contract to Sell and Buy—Nature of Transaction.
    2. An agreement to sell and buy is preliminary to a sale, resulting
in a sale only if the terms thereof are fulfilled.

Same — Deeds — Escrow — Immediate Possession — Nature of Title of Buyer.

3. Where the buyer of land was permitted to take immediate possession under a contract which provided for payment of the purchase price in annual installments, deed to be deposited in escrow and delivered upon full compliance with the terms of sale, his title was no more than an equitable one, default on his part in any one of its conditions giving the seller the privilege to declare his rights lost and consider him a mere tenant at will.

Contracts—Ambiguity—Interpretation Against Whom.

4. Under section 5043, Revised Codes, ambiguity in the language of a contract must be interpreted most strongly against the party who drew it.

Real Property—Contract of Sale—Breach—Liquidated Damages—Rent.

5. Where a contract of sale of land contains a provision that a fixed amount may be regarded as liquidated damages or as rent in case of default in any deferred payment of the purchase price, the instrument is executory in character, and not a sale.

*Appeals from District Court of Fergus County; Roy E. Ayers, Judge.*

ACTION by the Wright Land & Investment Company against Peter Even and others. Judgment for plaintiff, and defendants appeal from it and an order overruling their motion for a new trial. Reversed, with directions to enter judgment for defendants.

*Messrs. Blackford & Huntoon* and *Mr. Oscar O. Mueller,* for Appellants, submitted a brief; *Mr. Mueller* argued the cause orally.

The law upon the question presented is as stated in *Munroe* v. *Taylor,* 191 Mass. 483, 78 N. E. 106. This was a case in which the plaintiff, upon making a sale, was to receive as his compensation all he could obtain beyond a certain sum; a contract to purchase was entered into in writing and the court says: "What the plaintiff really undertook was not only to find a purchaser at a fixed price, but to effect a sale, which meant a payment of that price, and this having been done, he would have earned the excess, but until the consideration became payable, or the defendant refused to convey, he could not demand any remuneration or maintain an action for breach of the contract." (See, also, *Walker* v. *Tirrell,* 101 Mass. 257, 3 Am.

Rep. 352; *Burnett* v. *Potts,* 236 Ill. 499, 86 N. E. 258; *Sill* v. *Ceschi,* 167 Cal. 698, 140 Pac. 949; *Wolverton* v. *Tuttle,* 51 Or. 501, 94 Pac. 961.)

*Mr. O. W. Belden* and *Mr. Frank A. Wright,* for Respondent, submitted a brief; *Mr. H. L. De Kalb,* of Counsel, argued the cause orally.

In *Christensen* v. *Cram,* 156 Cal. 633, 105 Pac. 950, the court said: "It is alleged that the plaintiff sold the property to defendant at the price named. The word 'sold' is often used to indicate an executory agreement for the sale of property. Instances of such use are exhibited in *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 212, 9 Am. St. Rep. 199, 18 Pac. 248; *Eaton* v. *Richeri,* 83 Cal. 185, 23 Pac. 286; *Pettinger* v. *Fast,* 87 Cal. 461, 25 Pac. 680; *Shainwald etc. Co.* v. *Cady,* 92 Cal. 83, 28 Pac. 101, cited by the appellant. For example, if by contract an agent is to receive a commission upon a sale of property, or when property is sold, a valid executory agreement of sale will answer the condition. The word 'sale' does not necessarily, and in all connections, mean that a conveyance must be made, or that the title must pass. (*Eaton* v. *Richeri, supra.*)"

In this connection the provisions of our Code become of the utmost importance, for all the cases recognize that when a contract, whether of sale or for sale, of real estate is entered into, an interest, to-wit, the equitable title, passes to the purchaser. Section 5079 of the Revised Codes reads as follows: "Sale is a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." Again section 5033 provides: "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." The court knows the popular meaning of the word "sale." Any man who has entered into a contract to sell habitually declares that he has sold his property. In this case we have shown that

the word has a legal meaning in this connection consistent with that custom.   We refer the court to the following further cases on this point: *Betz* v. *Williams etc. Loan Co.,* 46 Kan. 45, 26 Pac. 456; *Lawler* v. *Armstrong,* 53 Wash. 664, 102 Pac. 775; *Hugill* v. *Weekley,* 64 W. Va. 210, 15 L. R. A. (n. s.) 1262, 61 S. E. 360.

It was held in a case where the brokerage contract made an actual sale a condition precedent to the right of the broker to demand compensation that where a valid contract was entered into between the principal and a customer, the broker, having acted in good faith, was not deprived of his commission by the fact that the customer failed to carry out the contract.   (*Davis* v. *Lawrence,* 52 Kan. 383, 34 Pac. 1051; *Willes* v. *Smith,* 77 Wis. 81, 45 N. W. 666; *Mitchell* v. *Aten,* 37 Kan. 33, 1 Am. St. Rep. 231, 14 Pac. 497; *Neiderlander* v. *Starr,* 50 Kan. 770, 33 Pac. 592; *Little* v. *Fleishman,* 35 Utah, 566, 24 L. R. A. (n. s.) 1182, 101 Pac. 984; *Humphries etc.* v. *Smith,* 5 Ga. App. 340, 63 S. E. 248; *Francis* v. *Baker,* 45 Minn. 83, 47 N. W. 452; *Burns* v. *Oliphant,* 78 Iowa, 456, 43 N. W. 289; *Kalley* v. *Baker,* 132 N. Y. 1, 28 Am. St. Rep. 542, 29 N. E. 1091; *Badger Silver Min. Co.* v. *Drake,* 88 Fed. 48, 31 C. C. A. 378; *Keinath, Schuster & Hudson* v. *Reed,* 18 N. M. 358, 137 Pac. 841.)

Counsel insists that where the commission contract provides for the broker receiving all over a certain sum, the broker must collect from the purchaser of the land, and cite the case of *Wolverton* v. *Tuttle,* 51 Or. 501, 94 Pac. 961, as authority. What is said there is *obiter dictum* in the first place, and is not supported by other authorities in the second place.   In that particular case it was held that the broker was not entitled to any commission because all he procured was the net price.   This is not in any sense an authority, for the reason mentioned. (*Reams* v. *Wilson,* 147 N. C. 304, 60 S. E. 1124.)   The holding which the appellants seem to think is made in the *Wolverton-Tuttle Case* would be at variance with all the decided cases on the question of the person to whom the broker must look for compensation.   Thus, in *Arnold* v. *National Bank of Waupaca,*

126 Wis. 362, 3 L. R. A. (n. s.) 580, 105 N. W. 828, the court says of a contract providing for the payment of commissions of all over and above a certain net price in a suit by the broker against the principal, that: "The authorities are uniform to the proposition that such act on the part of a real estate agent employed to find a customer at a net price to the seller, earns the agreed commission whether sale is consummated or not, and although failure to make sale is due to the owner's inability to make good title. (*Riemer* v. *Rice,* 88 Wis. 16, 59 N. W. 450; *Donohue* v. *Padden,* 93 Wis. 20, 66 N. W. 804; *Phelps* v. *Prusch,* 83 Cal. 626, 23 Pac. 1111; *Fitzpatrick* v. *Gilson,* 176 Mass. 477, 57 N. E. 1000; *Monk* v. *Parker,* 180 Mass. 246, 63 N. E. 793.) Contracts of this character are treated by the courts as entitling the broker to sue the principal for the amount of the commission regardless of whether it is paid or not. (*Mattingly* v. *Roach,* 84 Cal. 213, 23 Pac. 1117; *Church* v. *Dunham,* 14 Idaho, 776, 96 Pac. 203.)   In this respect we might mention that there is a distinction to be made between the use of the term "net" and "net cash." (5 Words and Phrases, Old Series, 4776; *Love* v. *Scatcherd,* 146 Fed. 1, 77 C. C. A. 1.)

MR. JUSTICE COOPER delivered the opinion of the court.

This is an action to recover a commission for the sale of lands. The following contract (Exhibit "A"), partly written and partly printed, was prepared by the manager of the land department of the plaintiff and by the defendant J. C. Miller, acting as trustee for his codefendants, signed and delivered to plaintiff:

[1] "No. ――                                        May 9, 1914.

"I hereby appoint Wright Land & Investment Company of Lewistown, Montana, ――, agent to sell the following real estate in Fergus county, Montana, to-wit: N. ½, Sect. 14, South ½ and NW. ¼, Sect. 11, Twp. 16, Range 15, including crop now on place except ½ of crop on N. 160.

"I will accept for said property the sum of $45.00 per A. net, on the following terms, to-wit: $1,000 at the time of enter-

ing into the contract of sale, balance terms to be arranged, * * *

"I agree to furnish purchaser with warranty deed and abstract of title showing perfect title. At time of sale I agree to pay said agent as commission for selling said property $—— any amount he can get over the above price.

"I reserve the right myself to sell or to list with other agents. Unless sale is made by myself or by other agents, this appointment will hold good until notified.

"Signed—J. C. MILLER, Trustee."

Acting thereunder, plaintiff produced as a purchaser one Frank Bralley, between whom and defendant Miller, trustee, a paper entitled "Contract for the Sale of Real Estate," hereafter called Exhibit "B," was entered into, in which defendants agreed to sell, and Bralley agreed to buy, the lands of defendants. Under its terms there was to be deposited in escrow in the Bank of Fergus county, a good and sufficient deed to the premises, with instructions for its delivery to the purchaser upon compliance with the terms prescribed therein. The payments were divided into nine; the first, of one dollar, to be paid on delivery to the bank of Exhibit "B"; the second, of $2,000, on January 1, 1915; and the other seven, varying in amounts, on the first day of January of each succeeding year thereafter, until January 1, 1922. It was provided that Bralley should take possession of the premises, cultivate and raise crops thereon, and after deducting the cost of production and marketing thereof, the overplus should be applied to the payment of the principal and interest to become due upon the next succeeding installment; that all state and county taxes, after 1914, should be paid by Bralley; and, by direction of defendants' Exhibit 1, the memorandum accompanying the escrow, in the event of a full compliance on the part of Bralley with Exhibit "B," the deed to the land should be delivered by the bank to him.

The complaint alleges the performance of all of the covenants, terms and conditions to be performed by the plaintiff and that

the commission of $2,400, for the making of the sale, is due. The answer denies the making of a sale of the premises and that a commission is now due plaintiff, or will be due until the payment of the full purchase price therefor. A trial was had before the court without a jury, and judgment rendered in favor of the plaintiff for the sum of $2,400. Defendants' motion for a new trial was overruled. They appeal from the judgment and from the order overruling the motion.

The court erred, it is insisted by appellants, in finding that the commission of $2,400 was due plaintiff immediately upon the execution and deposit in escrow of Exhibit "B." Respondent's position is that the "time of sale" was signaled by its signing and delivery in escrow. Appellants insist that a sale was not, and could not be, consummated until the requirements of Exhibit "B" were met by the proposed purchaser. Does that instrument embody terms and conditions the legal equivalent of a sale absolute, or merely a contract executory in its nature? A careful analysis of our Code provisions defining sales and providing rules for the interpretation of contracts such as these will render a correct solution of the question comparatively easy; for if, by the use of the words in Exhibit "A," "at the time of sale I agree to pay said agent as commission for selling said property," was meant that plaintiff's commission was earned when a contract of purchase was executed, then the judgment must stand; if it was not earned until the purchase price had been fully paid, the action was prematurely brought, and judgment must be ordered in appellants' favor.

What were the ultimate aims and objects of the parties? Obviously, upon the part of plaintiff, it was the earning of the three dollar per acre commission; upon the part of defendants, it was the sale of their lands for the sum of forty-five dollars per acre net to them. Upon the accomplishments of these purposes the minds of both parties met. The record discloses the following to be undisputed: The words "May 9, 1914;" the word "Fergus" before "County," and the description of the land, and the words "including crop now on the place except

½ of crop on N. 160," and the price "$45.00 per A net," "the price '$1,000,'" payment to be made at the time of entering into the contract, and the words "balance terms to be arranged," the word "notified" in the last line, and the signature "J. C. Miller, Trustee," are all in pen and ink handwriting. The above quotations are taken from the testimony of Lloyd D. Burton, the manager of the land department of the plaintiff. It was agreed upon the trial that the terms and stipulations of Exhibit "B" "have been on the part of both parties thereto fully complied with"; that nobody was then in default, "and that the money has not been paid, and that the commission sued for has not been paid." Bralley viewed the land; it was priced to him by plaintiff at forty-eight dollars per acre; he took immediate possession under Exhibit "B," harvested and marketed the crops already planted and growing thereon, and from the proceeds paid the sum of $487.17 on the principal due January 1, 1915, leaving a deficit on the next installment due January 1, 1916, of $1,512.83. Bralley had no money; was in financial straits and unable to meet the payments as they fell due. The record further shows that $487.17 was the only payment made upon the principal at all; and that the defendants are able, willing and ready to pay plaintiff's commission when the same is earned and the purchase price fully paid.

Exhibit "B" also contained the following: "In the event of a failure to comply with the terms hereof by the said party of the second part [Bralley], or either of them [the terms], the first party [defendants] shall be released from all obligations to convey the said premises or any part thereof; and the said party of the second part [Bralley] shall forfeit all payments made thereon which shall be considered as rental for the said premises, as it would be difficult to fix the actual damage to the party of the first part [defendants] by the said party of the second part [Bralley]."

There is oral testimony in the record, conflicting in character, concerning the time the commission would be due; but as the intention of the parties is evident enough from the writings

themselves, and the evidence would tend to vary them, no consideration need be given it.

A careful scrutiny of Exhibit "A" reveals that by the first paragraph, plaintiff is made the agent of the trustee to *sell* the property described; by the second, the minimum figure (forty-five dollars per acre) the trustee is to receive therefor, and the terms the agent (plaintiff) is to make to the buyer "at time of entering into contract of sale" are fixed (the quoted words in print) ; "balance terms to be arranged" in pen and ink. By the third paragraph, the trustee agrees to furnish abstract showing perfect title, and "at time of sale" agrees to pay the agent for *selling* said property, "any amount *he can get* over the above price." By the last, the trustee reserves the right to himself to *sell,* or to list with other agents; and "unless *sale* is made by myself, or other agents, this appointment will hold good until notified." With what degree of reason can it be contended that the whole tenor of the contract contemplated anything less than a completed sale? True, the printed words are, "at time of entering into contract of sale." But they were there already—not inserted at the dictation of the trustee, so far as the record shows. They must, therefore, be subordinated to the written words. Section 5039 of the Revised Code reads: "Particular clauses of a contract are subordinate to its general intent." The following section also has particular reference to, and is aimed directly at, a contract prepared as this was, as will appear by its language: "When a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view of their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded." Section 5041 reads: "Repugnancy in a contract must be reconciled, if possible, by such an interpretation

as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." The general intent here is plain upon the face of Exhibit "A." "I hereby appoint Wright Land & Investment Company of Lewistown, Montana, *agent to sell*," are its opening words; and, further on, in the fourth paragraph: "I reserve the right to myself to *sell*,"—not "I reserve to myself the right to make an agreement to sell," nor "to make a contract for a sale." Exhibit "A" is an agreement establishing an agency to sell; Exhibit "B" an agreement for a sale. The latter is conspicuously labeled, "Contract for the Sale of Real Estate"; and in express words, "the said party of the first part (Miller, Trustee) agrees to sell and convey," and the second party (Bralley) "agrees to buy" the premises in question. The transaction plaintiff perfected when it procured Bralley to enter into Exhibit "B," was, therefore, not a sale.

Section 5084, Revised Codes, reads as follows: "An agreement to sell and buy is a contract by which one engages to transfer the title to a certain thing to another, who engages to accept the same from him and to pay a price therefor." The early case of *Ide* v. *Leiser*, 10 Mont. 5, 24 Pac. 695, decided by this court before the Codes, defines an agreement to sell, as "a contract to be performed in the future, and if fulfilled, results in a sale. It is preliminary to a sale, and is not the sale. Breaches, rescission or release may occur, by which the contemplated sale never takes place." Thus it is made clearly to appear that Exhibit "B" did not effect a transfer of title—was not a sale, but only an executory agreement to buy.

What, then, was the title under which Bralley held? Clearly, not more than an equitable one; for his right of possession endured only so long as the requirements of the contract were promptly met; upon default in any one of its conditions, he might be subjected to the loss of all his rights and reduced to merely a tenant at the will of the seller. (*Knapp* v. *Andrus,* 56 Mont. 37, 180 Pac. 908.) Under the interpretation given the agreements by the court below, defendants are held liable

to pay a commission on an uncompleted sale that may never be consummated.   By section 5031, Revised Codes, all three of the contracts "are to be taken together."   And by force of section [4] 5043, in cases of uncertainty "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."   In this case, such party is the respondent; for it was the author of all the contracts forming the basis of this controversy, and must be held to have employed words to best express the purpose it sought to accomplish.   The effect of the trial court's ruling, in view of the inability of the buyer to make even the first payment, would be to force from the pockets of appellants a commission of $2,400 not yet earned, and before the receipt by them of any substantial sum to compensate them for the use of their property in the interim.

The conclusion we have reached is in full accord with the adjudicated cases upon the subject, as will presently be seen. Many of the commissions due to agents and brokers turn more or less upon implied obligations growing out of the peculiar circumstances in the decided cases.   Here the contract expressly states the terms and conditions of the obligation and the minimum price the seller is to receive, leaving no room for implication.   The plaintiff, in words of its own choosing, was empowered to make a sale at a fixed price per acre of forty-five dollars to the defendants, its compensation to be "any amount he can get over the above price."   The complaint alleges a sale. Under the listing agreement, the plaintiff undertook to produce a purchaser ready, willing and able to buy, and this necessarily implied a consummated sale—such a contract as the courts will enforce on demand.   This it failed to do.   Recovery can only be had upon proof of a sale in fact.

In Clark & Skyles on the Law of Agency, volume 2, section 771, the general rule is stated thus: "It is not sufficient that he should enter into an agreement to purchase, but he must actually purchase, by complying with the terms agreed upon, unless his failure to do so is occasioned by the fault of the ven-

dor.'' The text is amply supported by the following authorities: *Cremer* v. *Miller,* 56 Minn. 52, 57 N. W. 318; *Lawrence* v. *Rhodes,* 188 Ill. 96, 58 N. E. 910; *Cavanaugh* v. *Conway,* 36 R. I. 571, 90 Atl. 1080; *Haynes* v. *Oliver,* 154 Ill. App. 639; *Rankin* v. *Grist,* 61 Tex. Civ. App. 484, 129 S. W. 1147; *Crum* v. *Slade etc.* (Tex. Civ.), 154 S. W. 351; *Moss & Raley* v. *Wren,* 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; *Felts* v. *Butcher,* 93 Iowa, 414, 61 N. W. 991; *Warnekros* v. *Bowman,* 14 Ariz. 348, 43 L. R. A. (n. s.) 91, 128 Pac. 49; *Bader* v. *Moore Bldg. Co.,* 94 Wash. 221, 162 Pac. 8; *Holcomb* v. *Stafford,* 102 Minn. 233, 113 N. W. 449; *Scott* v. *Merrill's Estate,* 74 Or. 568, 146 Pac. 99; *Lawrence* v. *Pederson,* 34 Wash. 1, 74 Pac. 1011; *Zurcher* v. *Booth,* 80 Or. 335, 157 Pac. 147; *Block* v. *Ryan,* 4 App. Cas. (D. C.) 283; *Bradford* v. *Menard,* 35 Minn. 197, 28 N. W. 248; *Olsen* v. *Jodon,* 38 Minn. 466, 468, 38 N. W. 485; *Munroe* v. *Taylor,* 191 Mass. 483, 78 N. E. 106, 108; Walker on the Law of Real Estate Agency, secs. 85, 119; 24 Am. & Eng. Ency. of Law, 1045; 19 Cyc. 252.

Authorities abound in an unbroken line, holding that where **[5]** a writing contains a provision that a fixed amount may be regarded as liquidated damages, and as rent, it makes of such an instrument an obligation, executory in character, and not a sale. (*Lawrence* v. *Rhodes, supra; Kimberly* v. *Henderson,* 29 Md. 512; *Moss etc.* v. *Wren, supra; Lewis* v. *Briggs,* 81 Ark. 96, 98 S. W. 683; *Lawrence* v. *Pederson, supra; Block* v. *Ryan, supra; Ramsey* v. *West Texas Bank & T. Co.* (Tex. Civ.), 155 S. W. 551; *Simpson* v. *Eardley* (Tex. Civ.), 137 S. W. 378; *Cavanaugh* v. *Conway, supra; Douglas* v. *Spangenberg,* 23 Cal. App. 294, 137 Pac. 1103; *Condict* v. *Cowdrey,* 139 N. Y. 273, 34 N. E. 781; 19 Cyc. 251; Walker on the Law of Real Estate Agency, sec. 85.)

''In *Keener* v. *Harrod,* 2 Md. 63, 70, 56 Am. Dec. 706, the court said: 'The legal import of an agreement to procure a purchaser, binds the party to name a person who ultimately *buys* the property,' as was held in *Murry* v. *Currie,* 32 Eng. Com. L. 641, cited by the court in support of its language. In

*Kimberly* v. *Henderson,* 29 Md. 512, 515, the court said: 'To be entitled to their commissions as brokers they should have completed the sale, that is, they should have found a purchaser in a situation, and ready and willing to complete the purchase according to the terms agreed upon. The undertaking to procure a purchaser requires of the party so undertaking, to produce a party capable and who ultimately becomes the purchaser. These propositions are settled in *Keener* v. *Harrod,* 2 Md. 63, and *McCavock* v. *Woodlief,* 20 How. (U. S.) 221, 15 L. Ed. 884.' In *Kimberly* v. *Henderson, supra,* there was a written agreement for sale with a stipulation that in case either party should fail to comply with the contract, a forfeit of $1,000 should be paid by the party in default to the other party. The vendee was unable to comply, being disappointed in the receipt of funds which he expected to receive, and he paid the forfeit accordingly." (*Riggs* v. *Turnbull,* 105 Md. 135, 11 Ann. Cas. 783, 8 L. R. A. (n. s.) 824, 66 Atl. 13.)

The effect of the ruling of the trial court, interpreting the meaning of the contracts to be that the plaintiff's commission was earned immediately upon the execution of Exhibit "B" and its deposit in escrow with the deed, was to import into the agreement a meaning not to be inferred from the language used. Upon no possible theory can the conclusion be sustained.

The judgment and order overruling defendants' motion for a new trial are reversed, with directions to enter judgment for defendants.

*Remanded with directions.*

ASSOCIATE JUSTICES HOLLOWAY, HURLY and MATTHEWS concur.

MR. CHIEF JUSTICE BRANTLY concurs in the result.

Motion for rehearing denied January 23, 1920.