ADLAM ET AL., RESPONDENTS, *v.* McKNIGHT, APPELLANT.

(No. 2,089.)

'(Submitted March 23, 1905.   Decided April 20, 1905.)

*Sales—Personal Property—Executory Agreement of Sale—
Evidence.*

Sales—Personal Property—Intention—Identification.
    1.   Under Civil Code, section 1540, the actual passing of title, as between the parties to a contract of sale of personal property, is made dependent upon the intention of the parties and the identification of the thing sold.

Sales—Personal Property—Intention—Question of Fact.
    2.   The intention of the parties to a contract of sale of personal property is one of fact, to be determined by the jury under proper instructions of the court.

Sales—Personal Property—Executory Agreement—Evidence.
    3.   Evidence held insufficient, under Civil Code, section 1540, to show that an agreement to sell certain cattle amounted to an actual sale, so as to make the vendee, who prior to delivery promised to retain a part of the purchase price and pay it to a creditor of the vendor, indebted to such creditor on account thereof.

*Appeal from District Court, Flathead County; D. F. Smith,
Judge.*

ACTION by W. J. Adlam and another, copartners as Adlam & Thompson, against J. W. McKnight.   Judgment for plaintiffs.   Defendant appeals from the judgment and an order denying his motion for a new trial.   Reversed.

*Mr. J. E. Erickson* and *Messrs. McConnell & McConnell,*
for Appellant.

*Messrs. Downing & Roote,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced by Adlam & Thompson to recover from the defendant McKnight the sum of $288.80.   The complaint alleges that during the month of January, 1898, the plaintiffs sold and delivered to one Charles Simons goods,

wares, and merchandise of the value of $343.10; that about the same time Simons sold and delivered to McKnight certain cattle for the sum of $700 or thereabouts; that afterward Simons directed McKnight to withhold from the moneys due him by McKnight, and to pay to the plaintiffs, the said sum of $343.10, being the amount of Simons' bill to these plaintiffs; and that McKnight did withhold said amount from the moneys due from him to Simons, and did promise to pay said sum to these plaintiffs, but neglected and refused to pay the same or any part thereof, except the sum of $54.30, which, it is alleged, was paid on May 27, 1898. The answer denies all the material allegations of the complaint, and sets forth that the agreement pleaded in the complaint is a special promise to answer for the debt or default of another, and, not being in writing, is within the inhibition of the statute of frauds. The cause was tried to the court and a jury. Special interrogatories were submitted to and answered by the jury, which also returned a general verdict in favor of the plaintiffs for the amount claimed, upon which verdict a judgment was entered. From this judgment, and an order overruling his motion for a new trial, defendant appealed.

The court gave to the jury a general instruction outlining the issues disclosed by the pleadings as indicated above, and then proceeded: "The issues to be decided by you are: 1. Did Charles Simons direct defendant, McKnight, to pay Adlam & Thompson the amount alleged? 2. If Charles Simons directed defendant, McKnight, to pay Adlam & Thompson the said amount, did McKnight at that time have in his hands sufficient money belonging to Simons to pay the said debt? 3. If Simons directed defendant, McKnight, to pay Adlam & Thompson the amount stated, and the defendant, McKnight, had in his hands at that time sufficient funds belonging to Simons to pay the same, did he agree to pay plaintiffs the said amount, and fail to keep his agreement? If you decide each of the above issues in the affirmative, you will find for the plaintiffs for the amount found to be due. Unless you decide

each of the above issues in the affirmative, you will find for the defendant."

It thus becomes entirely immaterial what theory of this case the plaintiffs may have had, for the case submitted to and determined by the jury is made by the court in limiting the jury to a consideration of the three questions propounded above. Under the pleadings, as well as these instructions of the court, there was not any question of novation or of an original promise on the part of McKnight involved.

The evidence is conflicting as to the subject matter of the first and third questions, and, for the purpose of this appeal, it may be said to be sufficient to sustain the findings of the jury in reference thereto. So far as the answer to the second question above is concerned, it may be said that the only evidence touching this feature of the case is to be found in the testimony given by Simons, a witness for plaintiffs, and by the defendant, McKnight, in his own behalf; and since the court told the jury that they must answer the second question in the affirmative, as well as each of the other two, in order to find for the plaintiffs, the decision on this appeal turns upon the question: Does the evidence show that, at the time McKnight made the promise (if he made it), he had in his possession funds belonging to Simons sufficient to pay the bill of Simons to Adlam & Thompson?

On his cross-examination the witness Simons testified: "I sold thirty-two head of cattle to Mr. McKnight; I was to receive $22 a head for them. I bargained to sell, I told him. He wanted to buy the brand, and I told him there must be about fifty-six head, and Hank Weimer went out and only gathered thirty-two head; that was all I sold him. I was in debt to Mr. McKnight at that time; I think I owed him $71; I don't know for certain how much I owed him."

During his examination the defendant, McKnight, in his own behalf testified as follows: "I am acquainted with Charles Simons. I had some business transactions with him in the

early part of the year 1898; I think it was afterward, about four or five days, he came to me and wanted to sell me some cattle he claimed he had on the reservation, and said he had fifty-six head, and I asked him how much he wanted, and he said $22 a head for them, and I said that I would buy them from him, and he gave me a bill of sale for fifty-six head of cattle to be delivered some time in the spring. *. * * These cattle were delivered between the 25th of February and the 1st of March, I think. I gave him credit for what they came to on the 1st of March. There were thirty-two head of cattle delivered, and I was to pay him $22 a head. On the 1st of March, when these cattle were delivered to me, Mr. Simons owed me $609. He owed me that amount before the delivery of the cattle; after the cattle were delivered I was a little bit in his debt—$73. He had $73 to the good. This $609 was an account I had against Simons, and part of it had been running for a couple of years; he had been trading at my store and got goods there, and that is what induced me to buy the cattle, and get even with him again. * * * I did not give Simons credit for the cattle until they were turned over; that was the understanding with Simons—that no money should be exchanged or value exchanged until the delivery, and they was accepted by me; that is the ordinary way of doing business."

The evidence discloses that the agreement between Simons and McKnight for the sale of the cattle was made on or about January 2, 1898, and the agreement by McKnight to pay the amount of Simons' bill to Adlam & Thompson, if made at all, was made on or about January 11, 1898. In order for the jury to say, as it did, that on January 11th McKnight had in his hands sufficient funds belonging to Simons to pay the debt of Simons to Adlam & Thompson, it must have found that the agreement made on January 2d between Simons and Mc-Knight amounted to an actual sale, wherein title to the property which was the subject of sale passed at once to McKnight, for it is only upon this theory that it could be said that Mc-

Knight had in his possession any money belonging to Simons, or was indebted to Simons in any amount whatever. But upon what testimony could the jury justify such a finding? The only evidence in reference to the sale is that given above.

Section 1540 of the Civil Code provides: "The title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not." An analysis of this section shows that the actual passing of title, as between the parties to the contract, is made dependent upon, first, the intention of the parties; and, second, the identification of the thing sold. So far as the evidence above discloses any intention, if it does disclose any whatever, it is that the title was not to pass until delivery; and there is no evidence at all as to any identification of the property, unless the act of delivery was such identification, and this did not occur until about March 1st. The intention of the parties is one of fact, to be determined by the jury, and the court should by proper instructions have guided the jury in determining whether there was in fact a sale or merely an executory agreement of sale, as defined in section 2323 of the Civil Code. (24 Ency. of Law, 2d ed., 1048, and cases cited; 1 Benjamin on Sales, Corbin's ed., secs. 309, 311.)

No instructions upon this phase of the case were given, and from the meager proof it was impossible for the jury to say that, as between Simons and McKnight, they intended that the title should pass at once, and that there was in fact an identification of the property sold. How many cattle did McKnight in fact agree to purchase? Suppose that between the date of the agreement between McKnight and Simons and the date of delivery all the cattle had died, would McKnight have been indebted to Simons, and, if so, for what amount? If McKnight was indebted to Simons on the 11th of January, was it for fifty-six head of cattle, or for only thirty-two, the number which was actually afterward delivered, and was not the delivery the only identification ever intended by the parties?

These are questions which suggest themselves, and which cannot be answered from the evidence in this record.

There was not sufficient evidence before the jury to justify an affirmative answer to interrogatory No. 2 above; and, as the court instructed the jury that every one of the three questions submitted must be answered in the affirmative in order to support a verdict in favor of the plaintiffs, the verdict returned and the judgment based thereon are not supported by the evidence. We are of the opinion that the court adopted the correct theory of the case as disclosed by the pleadings, but there was not even sufficient evidence to go to the jury upon the subject embraced in the interrogatory No. 2 above, and for this reason the judgment and order are reversed, and the cause is remanded to the district court with directions to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.