DeMERS, Respondent, v. O'LEARY, et al., Appellants.
No. 9096.
Submitted November 14, 1952. Decided March 25, 1953.
254 Pac. (2d) 1080.

Mr. Sherman W. Smith, Mr. Paul T. Keller, and Mr. Melvin E. Magnuson, Helena, for appellant.

Mr. Lloyd I. Wallace, Mr. J. A. Turnage, Mr. F. N. Hamman, Polson, for respondent.

Mr. Magnuson and Mr. Wallace argued orally.

MR. JUSTICE FREEBOURN:

Plaintiff and respondent recovered judgment in the amount of $2,348.34 for personal property, allegedly sold and delivered to defendants, and from such judgment defendants, J. D. Shaw, George McGaffick, and the Blue Bay, Inc., a corporation, appeal.

Plaintiff's complaint alleges: ''That on or about the 4th day of November, 1948, at Lake County, Montana, the plaintiff sold and delivered to the defendants, at their special instance and request, goods, wares, and merchandise * * * That the reasonable value and agreed price of said personal property was and is

the sum of Two Thousand Five Hundred Dollars ($2,500.00). * * * That no part of said sum has ever been paid, although demanded and that the whole thereof is * * * unpaid.''

Defendants Shaw, McGaffick, and the Blue Bay, Inc., by answer, denied the allegations of the complaint, and the cause was tried as against them only. Defendant Hester, not having been served with summons, made no appearance, and the cause was dismissed as to O'Leary.

The record discloses that in September, 1948, DeMers had possession, by virtue of lease with the Consolidated Salish and Kootenai Tribes of Indians, of certain lands, with a lodge and cabins thereon, known as ''the Blue Bay property,'' situated on the east shore of Flathead Lake.

As part of the furnishings and equipment of such lodge and cabins, DeMers provided certain personal property of his own, such as linoleum for 8 cottages, 10 cottage oil stoves, juke box and records, bedding, and the like. It is this personal property of DeMers that is at issue in this case.

In the latter part of September 1948, DeMers entered into negotiations with defendants, O'Leary and Hester, with the understanding that O'Leary and Hester would take over the Blue Bay property through lease from its tribal owners, and if said lease was secured, they would buy said personal property of DeMers.

DeMers testified: ''They would agree to buy my property when the lease was consummated on Blue Bay.'' In a letter to O'Leary, dated November 4, 1948, DeMers said: ''I hereby agree to sell, assign and set over to you all my personal inventory, equipment, materials and supplies * * * located at Blue Bay * * * The above agreement shall be and is effective until November 20, 1948, and shall be considered cancelled and terminated thereafter.''

O'Leary testified: ''It was my understanding if the lease was granted, that we were * * * to take care of Mr. DeMers' property. Q. And pay him for it? A. Yes. * * * We did not obtain the lease. * * * It was not approved by the Indian Department.

\* \* \* The lease was turned down in Billings and subsequent to that Blue Bay [defendant corporation] came into existence.''

C. C. Wright, superintendent of the Flathead Agency, testified: ''Hester and O'Leary said they would be willing to pay for Mr. DeMers' property if they obtained the lease \* \* \* Q. That lease with Hester and O'Leary was never consummated, was it? A. No, I think not.''

It is clear from the evidence that a sale of such personal property as between DeMers, O'Leary and Hester never was consummated because O'Leary and Hester could not secure a lease on the Blue Bay property, and DeMers' offer to sell was withdrawn, cancelled and terminated on November 20, 1948.

There is no evidence in the record showing or tending to show that defendants, Blue Bay, Inc., McGaffick and Shaw, or any of them, as principals, were in the deal or took part in the negotiations between DeMers, O'Leary and Hester, prior to November 20, 1948.

Nor is there any satisfactory evidence from which it can be concluded that during such negotiations O'Leary and Hester were acting as agents of defendants, Blue Bay, Inc., McGaffick and Shaw, or any of them.

The allegations of the complaint, charging that the Blue Bay, Inc., a corporation, bought the personal property described and had such property delivered to it ''on or about the 4th day of November 1948'' could not be substantiated, for the simple reason that such corporation was non-existent at such time, and, as the saying goes, ''You can't feed oats to a dead horse.''

The certificate of the secretary of the state of Montana, in evidence, disclosed that Blue Bay, Inc., a corporation, was incorporated and came into existence on January 27, 1949.

Speaking of Shaw, DeMers testified:

''Q. Did J. D. Shaw ever agree to pay you $2500.00 for this property? A. No, I have not had an opportunity to meet or talk with him.''

Shaw testified he had ''never met DeMers until today [the day of the trial].''

Speaking of McGaffick, DeMers testified:

"Q. In your former cross-examination, Mr. DeMers, I think I am correct that you stated Mr. McGaffick never bought the property from you or agreed to pay for it? A. I said he never bought or paid for it. * * *

"Q. Did McGaffick ask you to sell this property to him on November 4, 1948? A. He was not present.

"Q. Well, did he or did he not? A. No, he was not present."

As to those of the named defendants with whom he had negotiations, DeMers testified:

"Q. In the fall of 1948 did you have any transactions with or negotiations with any of the parties named in this action with respect to selling the property? A. Yes, sir.

"Q. With whom? A. Specifically with Mr. O'Leary and Hester."

It seems apparent from the evidence that DeMers, in attempting to fasten liability upon defendants, Blue Bay, Inc., McGaffick and Shaw, proceeded upon the erroneous theory that Blue Bay, Inc. was in existence on November 4, 1948, either as a partnership or a corporation, and that O'Leary and Hester, as partners in the partnership or officers in the corporation, could bind Blue Bay, Inc., McGaffick and Shaw, by any agreement O'Leary and Hester might make with DeMers on or about November 4, 1948, as though Blue Bay, Inc., McGaffick and Shaw had personally made such agreement.

It may be inferred from the evidence that, as between DeMers, O'Leary and Hester, there probably was an understanding that whoever secured the lease on the Blue Bay property would pay DeMers for his personal property. There is, however, no evidence in the record which justifies the finding that Blue Bay, Inc., McGaffick and Shaw, or any one of them, consented or agreed to such understanding.

DeMers testified:

"Q. Why did you dismiss against Mr. O'Leary? A. Because it was understood by me that Mr. O'Leary was not a partner in Blue Bay. * * * Because I thought he was still a partner in Blue

Bay, Incorporated, but since have discovered he is not. * * *
It is my understanding * * * Mr. Hester * * * was originally a
partner of Blue Bay, Incorporated.

"Q. And, therefore, you made him a defendant because that
was your understanding? A. Yes, sir. * * *

"Q. Have you ever found where McGaffick was either a
stockholder or officer in Blue Bay, Incorporated? * * * A. That
was my understanding from the beginning * * *

"Q. So you assumed when the corporation was formed that
Hester was an officer and that is why you made Blue Bay a
party defendant? A. Yes, sir."

Under date of September 30, 1949, DeMers wrote McGaffick:
"* * * Mr. Leo O'Leary suggested that I write you regarding
the payment due me of $2500.00 for all my equipment and ma-
terial at Blue Bay that was taken over by your corporation.

"As you undoubtedly know, this was the amount agreed upon
by Mr. Hester, Mr. O'Leary and myself and so stated before
the Tribal Council of which I am a member. It was further
understood and agreed that I would receive payment of the
above amount shortly after the final consummation of the lease
of the Blue Bay property.

"Accordingly I would appreciate receiving your check in the
amount of $2500.00 and upon receipt of which I shall give you
or Mr. O'Leary a bill of sale covering all of the equipment
purchased * * *"

The evidence discloses that after its incorporation on January
27, 1949, Blue Bay, Inc., a corporation, secured a lease, dated
May 17, 1949, covering the Blue Bay property from its tribal
owners, and went into possession of the lodge, cabins and equip-
ment, including DeMers' personal property, on June 1, 1949,
McGaffick being president of the corporation and Shaw its
manager.

The trial court appears to have adopted the view that this is
an action in equity, for, in what is denominated an order, the
trial judge, the cause having been tried without a jury, says:
"Taking all of the facts into consideration, the court is of the

opinion that Blue Bay, Incorporated, and George McGaffick and J. D. Shaw, in equity, should pay the amount of $2000 to DeMers, which the court finds to be the value of this property."

This action is an action at law, not one in equity. It is an ██ action for goods sold and delivered and is based upon a contract, the complaint alleging a sale.

"It is generally held that an action for the price of goods sold is one at law * *" 46 Am. Jur., Sales, sec. 593, p. 732. See also 1 C. J. S.; Actions, sec. 1(2), page 943.

"Sale is a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." R. C. M. 1947, sec. 74-101.

Plaintiff's testimony does not support the allegations of the complaint. It shows not a sale, but an agreement to sell.

"An agreement for sale is either:

"1. An agreement to sell;

"2. An agreement to buy; or,

"3. A mutual agreement to sell and buy." R. C. M. 1947, sec. 74-103.

"An agreement to sell is a contract by which one engages, for a price, to transfer to another the title to a certain thing." R. C. M. 1947, sec. 74-104.

A sale, as distinguished from an agreement to sell, is the actual transfer of title from the grantor to the grantee, and an agreement to sell being a contract to be performed in the future, which if fulfilled results in a sale. Franzke v. Fergus County, 76 Mont. 150, 245 Pac. 962; Ide v. Leiser, 10 Mont. 5, 24 Pac. 695; Wright Land & Investment Co. v. Even, 57 Mont. 1, 186 Pac. 681.

"The title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not." R. C. M. 1947, sec. 67-1703.

The actual passing of a title, as between the parties to a con- ██ tract of sale of personal property, depends upon the intention of the parties. Adlam v. McKnight, 32 Mont. 349, 80 Pac.

613, 615. As said by this court in Adlam v. McKnight, supra: "The intention of the parties is one of fact, to be determined by the jury, and the court should by proper instructions have guided the jury in determining whether there was in fact a sale or merely an executory agreement of sale * * *."

Plaintiff's testimony shows that he did not pass title to the personal property to the defendants, and that he did not intend to pass such title to defendants until it was paid for.

He testified:

"Q. Do you own it? A. I certainly do. * * * There is a gasoline boat motor that I have in my home which is available at anytime. * * * A. Yes, it's mine until it's paid for.

"Q. Your answer is that you own it now? A. Yes, because it hasn't been paid for."

Speaking of McGaffick, plaintiff said: "I said he never bought or paid for it."

So that plaintiff's own testimony shows there was no sale as alleged in the complaint, but only, if it could have been shown that defendants were parties to the agreement and consented thereto, at best an executory agreement of sale.

If the title to the property has not passed to the buyer, as here, an action for goods sold will not lie. 46 Am. Jur., Sales, sec. 593, p. 732.

The mere breach of an executory contract for the purchase of goods will not support an action for the price, and a right of action for the price cannot exist where the transaction was not a sale. 78 C. J. S., Sales, sec. 436, page 51.

And ordinarily, the seller may not sue for the purchase price of the property until title has passed to the buyer, 78 C. J. S., Sales, sec. 439, page 58.

As said in Mente & Co., Inc., v. Fresno Compress & Warehouse Co., 113 Cal. App. 325, 298 Pac. 126, 127; "in a case where the title to the property has not passed to the vendee, the vendor, upon a breach of the contract, has no cause of action for the contract price."

There was, therefore, on the part of plaintiff, an utter failure

to prove that "on or about the 4th day of November, 1948 * * * plaintiff sold and delivered to the defendants, at their special instance and request" the personal property in question. There was, also, a fatal variance between the allegations of the complaint, which alleged a sale, and the proof, which established an executory agreement to sell.

At the close of plaintiff's case in chief, counsel for the appealing defendants made the following motion: "That the defendant, Blue Bay, Incorporated, * * * be dismissed on the ground and for the reason there is not one iota of testimony to the effect that Blue Bay, Incorporated, as such corporation * * * ever agreed to purchase any property * * * from the plaintiff. In this connection we would like to advise the alleged delivery took place on November 4th, 1948, and the defendant corporation was not chartered until January 27th, 1949. * * * We would like to make a similar statement on behalf of J. D. Shaw because the evidence affirmatively shows that Shaw had nothing to do with this entire transaction until the middle of June 1949. It is admitted that Mr. Shaw never did contact DeMers * * * We would like to make the same motion on behalf of George McGaffick and with the further reason on all three motions that the plaintiff himself testified this morning on the witness stand under oath that he was the owner of the property, and most certainly he cannot * * * collect $2500.00 for selling it and * * * still own it. * * * there is not one scintilla of evidence to show that Hester or O'Leary at any time through this entire transaction ever acted under agency from Blue Bay, Incorporated, Shaw or McGaffick. * * * the evidence shows they were acting as individuals * * * not in the name of Blue Bay, Incorporated, or George McGaffick or [Shaw]."

The motions were well taken and the cause should have been dismissed as against defendants, Blue Bay, Inc., McGaffick and Shaw.

For the reasons stated the cause is reversed and remanded to the district court with directions to set aside and vacate the

judgment entered in favor of plaintiff and enter an order dismissing the action as against the appealing defendants.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY and ANGSTMAN, concur.

MR. JUSTICE ANDERSON who was not a member of the court at the time of oral argument took no part in the decision.