JOHN WILLIAMS, Plaintiff and Respondent, v. BERT KEARNS, Defendant and Appellant.
No. 9890.
Submitted March 4, 1960. Decided June 20, 1960.
Rehearing denied July 27, 1960.
353 P.2d 748.

Lee Overfelt, Billings, Ralph J. Anderson, Helena, for appellant. Ralph J. Anderson argued orally.

Sandall, Moses & Cavan, Billings, for respondent. Charles F. Moses argued orally.

THE HONORABLE SID G. STEWART, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, delivered the Opinion of the Court.

This is an action by the plaintiff, respondent herein, seeking by his complaint the sum of $20,600, the alleged sale price of certain stocks in the Montana Hudson Company, alleged to have been purchased by the defendant from the plaintiff.

The material facts of the case were undisputed, and disclose that the Montana Hudson Company was, during all times of the controversy herein, a Montana corporation, duly organized and existing under and by virtue of the laws of Montana, and doing business in the State of Montana as a distributor and dealer in Hudson automobiles, with its principal place of business at Great Falls, Montana. The corporation was organized by the plaintiff, the defendant, and one R. B. Fraser, with an authorized paid-in stock of $50,000, the plaintiff, John Williams,

being the owner of 100 shares of stock of the Montana Hudson Company.

The testimony regarding the alleged sale of this stock centered largely around the writing of three letters. In the first letter, Mr. Sterling Wood, purporting to act on behalf of the defendant, offered to purchase from Mr. Williams, the plaintiff, 100 shares of stock in the Montana Hudson Company. This letter, dated November 25, 1952, stated in part as follows:

"I think I can effect an arrangement with Mr. Kearns that will be satisfactory to your client and self, for the purchase of the Williams stock for $23,000.00, less the open account mentioned, if Mr. Williams will deposit the stock in some reputable bank in Great Falls, in escrow, or in some other proper way, for delivery upon payment of the sum mentioned, provided that Mr. Williams makes satisfactory proof of ownership, and that the stock is free and clear of any liens."

This letter was replied to by a letter dated December 4, 1952, from Mr. George Sarsfield, an attorney at Butte, Montana, representing the plaintiff, and provided as follows:

"Mr. John G. Williams has informed me that his account in the Montana Hudson Company is in the amount of $1,-364.84. He is willing to sell his 100 shares of stock to Bert Kearns for $23,000.00, less his said indebtedness to the company, or $21,600.00 in round figures.

"You mentioned in your letter of November 25, 1952, that such an arrangement would be satisfactory to your client 'provided that Mr. Williams makes satisfactory proof of ownership and that the stock is free and clear of any liens.' Mr. Williams' proof of ownership is in the form of the stock certificates which he has in his possession, and which certificates contain the signatures of the President and Secretary of the company. As to the possibility of liens against such stock, Mr. Williams, I believe, would be willing to provide an affidavit to that effect. If such affidavit

would be deemed unsatisfactory to your client, we hold ourselves open to suggestions which would be satisfactory.

"If the above meets with your approval, I will deliver the executed stock certificates to Mr. Kearns, or his representative, upon receipt at my office of a Certified Check in the amount of $21,600."

To this letter, Mr. Sterling Wood, by letter dated December 31, 1952, accepted the proposed offer, as follows:

"Since writing you earlier in the day I have contacted Mr. Kearns.

"If I may regard your letter to me of the 4th inst. in the first paragraph thereof, as an offer by Mr. Williams to sell his stock to Mr. Kearns, warranting his title, for $21,600.00, I am authorized to say that the offer is hereby accepted. Then, if you will wire me as soon as this letter reaches you and you have contacted Mr. Williams, I will be glad to send you a check for $1,000.00 as a payment on the contract. You will undoubtedly have to get the stock from Mr. Williams, and, when that has been done, perhaps it will be convenient for you to meet Mr. Kearns at Great Falls, or he can do so with me at Butte, and the deal be closed and remaining payment made. I would like to have you confirm, by wire, the offer in your letter of December 4th and say that upon payment of $1,000.00, there shall be deemed to be a contract between the parties for the sale and purchase of the stock, with warranty of title, which will thus put me in a position to have the $1,000.00 remittance made to you at once, or to make it myself for Mr. Kearns' account.

"This letter should reach you on January 2nd and, if you can wire me before the close of banking hours that day, I will try to get off a check to you that should reach you January 3rd."

The acceptance of this offer was confirmed by telegram then sent to Mr. Sterling Wood by Mr. George Sarsfield.

Thereafter, the down payment of $1,000 was paid by the de-

fendant, Bert Kearns, to the plaintiff, John Williams, and the stock certificates, being the subject of the sale, were received by the attorney for the plaintiff, duly certified and assigned to the defendant for delivery to the defendant or his attorney upon receipt of the balance of the purchase price, according to the agreement of the parties.

The evidence further showed that prior to the contract between the parties, R. B. Fraser, one of the stockholders of the Montana Hudson Company, filed an action against the plaintiff alleging $10,000 due; that after the issuance of summons Sterling M. Wood, attorney for R. B. Fraser, caused a writ of attachment to be issued, and the 100 shares of the Montana Hudson Company, the subject of the agreement, hereinbefore cited, was attached by serving defendant, Bert Kearns, as president of said corporation; that defendant Kearns and his attorney, Sterling M. Wood, knew at the time of the contract and agreement that the stock was subject to the attachment lien and that the plaintiff was never advised of the existence of such attachment lien, and was not served with process, or advised of the pendency of the above-described action. However, it was shown that plaintiff has been and was at all times willing and able to have that portion of the purchase price, to be paid in this cause, applied upon the above attachment as a cash bond to secure R. B. Fraser. Accordingly plaintiff was able to deliver the stock certificates free and clear of any lien whatsoever. It was further shown that from and after the time of the contract between the parties, defendant Kearns, together with R. B. Fraser, asserted complete ownership and control over the corporation and that all acts in connection with the conduct and operation of the corporation were conducted exclusively by the defendant and R. B. Fraser, and that the same has been operated to the exclusion of any interest of the plaintiff in the corporation.

The final allegation in the complaint submits the stock certificates to the clerk of the district court of the thirteenth judicial

56

district of the State of Montana, in and for the County of Yellowstone, duly executed and assigned to the defendant for transfer and delivery to the defendant.

At the conclusion of all of the testimony, and upon plaintiff's motion, the court directed the jury to return its verdict for the plaintiff, in the following ruling:

"The court takes the view that under all the undisputed evidence in this case, there is no issue to be submitted to the jury. Likewise, the court takes the position that under the undisputed evidence and the law as applicable to such evidence, that the plaintiff is entitled to have an order directing the jury to return a verdict for the plaintiff and with that order for directed verdict, should include a provision that the offer made by the plaintiff at the time the tender of the stock certificates, which are the subject of the action, that a portion of the money, when paid shall be deposited with the Clerk of the Court in pursuance to the statute for the purpose of releasing the attachment and that the money so deposited, be ample in amount to secure the plaintiff in the action pending between R. B. Fraser and John Williams, being Civil Cause No. 26,917, and the amount of such bond to be determined by figuring the maximum recovery the plaintiff could obtain in said cause, with interest on such sum, and the cost in said cause, and upon application to the court in that particular case, the court will fix the amount of money that will be required to act as a bond in that cause."

The appellant raises two questions to be decided in this appeal: (1) Did the court err in refusing to permit defendant to object to portions of the testimony read by way of deposition of the defendant, and (2) Did the court err in granting plaintiff's motion for directed verdict?

As to the first question heretofore mentioned:

Early in the trial of this cause, the plaintiff called, as an adverse witness, the defendant, Bert Kearns. The witness

was not in attendance in court, and plaintiff asked that the deposition, taken pursuant to notice and under the provisions of section 93-1801-10, R.C.M.1947, be read to the jury. During the reading of this deposition, certain objections were made to questions asked the witness, where no objections had been interposed at the time the deposition was being taken. To these objections, the trial court ruled that the deposition was taken with counsel for each of the parties present, the deposition apparently was not taken pursuant to notice; that after the affidavit was filed for the purpose of obtaining the deposition, the parties, through their counsel of record, orally stipulated that it could be taken; that the deposition was taken in accordance with the statute relating to depositions, and that being true, the trial court must then stand upon the deposition as taken, and objections are not permitted at the time of trial which were not interposed at the time the deposition was taken.

Appellant specifies these rulings as error, and cites as authority the old California case of Nicholson v. Tarpey, 89 Cal. 617, 619, 26 P. 1101, wherein the court said:

"The testimony objected to is the same deposition, same objections to which were considered on the last appeal, and respondent claims that the decision has become the law of the case.

"To this it is sufficient to reply that the objections are not the same. Depositions are taken subject to all legal exceptions, except as to the form of the interrogatory, and when read on the retrial parties were at liberty to interpose new objections."

However, upon a reading of this case, it will be noted that objections had been raised at the time of the taking of the depositions, and at the time of trial new objections were made, in addition to, and in lieu of, the original objections, which the court held was proper.

It is therefore the opinion of this court that the ruling of the trial court was proper, and that where a deposition is

taken pursuant to the statutes, unless otherwise provided by stipulation of the parties at the time of taking the original deposition, no objections will be permitted by the trial court, unless objections were interposed at the time the deposition was taken.

Appellant's second specification of error that the court erred in granting plaintiff's motion for directed verdict is based upon the principle that the contract between plaintiff and defendant was an agreement to sell personal property, and not an actual sale of that property, and that the crucial question which should have been submitted to a jury was whether the title to the stock in question had passed.

Appellant contends that due to the attachment filed against the stock that plaintiff did not have clear title, free of encumbrances, and therefore did not comply with the terms of the contract, and thus rendered such contract an executory agreement wherein title had not passed to the defendant, the appellant herein. However, the uncontroverted testimony adduced at the trial of this case showed that although the certificates of stock may not have actually been transferred, or that an actual entry may not have been made on the books of the corporation, nevertheless, the title to the property of the corporation, evidenced by the stock certificates, actually was taken over by the defendant, and a distribution of all of that property was made by the defendant and Fraser to themselves, and, further, that at all times after the contract negotiations were complete, defendant Kearns and Fraser, considered themselves in all of the business of the corporation as the sole owners thereof, and that the plaintiff, John Williams was no longer considered as a stockholder or owner of any portion or interest in the corporation. Therefore, under the provisions of section 67-1704, R.C.M. 1947, "Title is transferred by an executory agreement for the sale or exchange of personal property only when the buyer has accepted the thing, or when the seller has completed it, prepared it for delivery, and offered it to the buyer, with intent

to transfer the title thereto, in the manner prescribed by the chapter upon offer of performance.''

Although under the decision in Adlam v. McKnight, 32 Mont. 349, 353, 80 P. 613, 615, the court stated that ''The intention of the parties is one of fact, to be determined by the jury, and the court should by proper instructions have guided the jury in determining whether there was in fact a sale or merely an executory agreement of sale.'' It has also been held that when one side of a case it without proof, the case is stripped of questions of fact, and presents only a question of law for decision by the court. Consolidated Gold & Sapphire Min. Co. v. Struthers, 41 Mont. 565, 573, 111 P. 152; Moore v. Crittenden, 62 Mont. 309, 312, 204 P. 1035.

Therefore, this court holds that the ruling of the trial court was proper, in that this case had been stripped of the question of fact of intention of the parties, and the intention was manifested by the actions of the defendant in holding the property of the corporation to his, and Fraser's, own use, showing that the sale had actually been completed and terminated, even though alleged encumbrances may have existed against the stock certificates.

The judgment of the trial court is therefore affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR, ANGSTMAN and CASTLES concur.