ALFRED J. DONICH, Plaintiff and Respondent, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, and C. E. NICKOLAS, Trustee, Defendants and Appellants.

UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Third-Party Plaintiff, *v.* JOHN T. VUKICH and GEORGINA VUKICH, Third-Party Defendants.

No. 11097.

Submitted December 12, 1966.   Decided January 25, 1967.

423 P.2d 298.

Ward Shanahan (argued), Helena, for appellants.

Marvin K. Daniels (argued), William R. Taylor (argued), Deer Lodge, for respondents.

C. W. Leaphart, Jr., Helena, for third-party defendants.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from the District Court of the Third Judicial District of the State of Montana, in and for the County of Powell. Judgment was for respondent Donich in the amount of $5,311.20, plus costs and interest. Recovery was upon a bond issued pursuant to the Packers and Stockyards Act of 1921.

For the purpose of this appeal the parties are Alfred J. Donich, the respondent in this appeal, the U.S.F. & G., de-

fendants and third party plaintiffs and John T. Vukich and Georgina Vukich, third party defendants.

Defendants-appellants issued the bond to John T. Vukich, doing business as Dillon Livestock Auction Company of Dillon, Montana. The bond was conditioned as follows: "* * * if the said principal shall safely keep and faithfully and promptly account for and pay to the owners or their duly authorized agents the proceeds of sales of all livestock received for sale on a commission basis by the said principal, then this bond shall be null and void; otherwise to remain in full force and virtue."

The focal point of this litigation is the applicability of the bond to the facts of this case. On February 14, 1963, in Deer Lodge, Montana, one Joe Ryan as agent for John Vukich and Dillon Livestock Auction Company solicited business from respondent. Respondent agreed to ship 41 calves to appellant. At this time, Mr. Ryan gave respondent a draft on the Dillon Livestock Auction Company in the amount of $400.00. Appellant contends that the draft was an advance payment for the calves. Respondent argues that Mr. Ryan wanted the endorsed draft for proof that he had solicited the consignment of respondent's cattle.

Before shipping the cattle, a Market Consignment Permit was obtained from a stock inspector showing the ownership of the cattle in respondent's name. On February 16, 1963, the calves were delivered by a Mr. Launderville to the auction company in Dillon. On arrival of the cattle a check-in ticket was obtained again showing Al Donich to be the owner and authorizing Dillon Livestock Auction Company "to sell said livestock for my/our account and give a bill of sale in my behalf." A check drawn on the Dillon Livestock Auction Company general account in the sum of $4,911.20 was given to Mr. Launderville for respondent. On the check was noted: "41 mixed calves @ 28.00 cwt." Both the draft and the check were subsequently not honored.

Mr. William Cheney, Executive Officer of the Montana Live-

stock Commission, was present at the livestock auction company on February 18, 1963, when the cattle in question were sold. A Market Inspection Report and Tally was made out indicating that the disposition of the proceeds was to be made to Alfred J. Donich, the owner of 42 head of cattle. The lower court's record shows that Mr. Cheney directed that the word "owner" be marked out and the phrase "Live Stock Commission, Helena, Montana" be substituted. The reason for the change was that Mr. Vukich claimed he was the owner of the cattle. Although Mr. Vukich had no bill of sale for the cattle, it is the practice of the Livestock Commission, when a question of ownership arises, to have the proceeds from the cattle sale sent to its office until the Commission indicates the proper disposal of the proceeds. The proceeds did not reach the Commission because there were no funds to pay the drafts of the Livestock Auction Company.

There are two specifications of error: (1) Was the transaction between respondent and Dillon Livestock Auction Company a consignment making appellant liable on the bond? (2) If respondent is entitled to recover upon the bond, is appellant, who is also third party plaintiff, entitled to a judgment against the third party defendants, John T. Vukich and Georgina Vukich?

In regard to the first specification of error, the question is what was the inherent character of the transaction? This depends upon the purpose of the transaction. Were the calves put in the hands of the Auction Company by respondent to be sold for respondent and on his account, creating the relation of principal and factor, or were the calves turned over to the Auction Company to be treated and sold as the Auction Company's own?

Appellant argues that the bond in question only covers transactions wherein the principal takes livestock on a commission basis, and since the Auction Company (the principal) purchased the calves by giving respondent an advance

payment in the nature of a draft for $400.00 and later, when the calves were delivered, giving a check for $4,911.20, the bond has no application. The bases of the contention are the notations "advance payment" on the draft and "41 Mixed calves @ 28.00 cwt" on the check. There is, however, no magic in either phrase making the transaction a sale, rather than a consignment. Section 67-1703, R.C.M.1947, which was still in effect at the time of this transaction in part provides: "The title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer * * *." The intention of the parties determines the nature of the transaction. Intention is always a question of fact. De Mers v. O'Leary, 126 Mont. 528, 534, 254 P.2d 1080; Adlam v. McKnight, 32 Mont. 349, 80 P. 613. See also 8 C.J.S. Bailments § 3(1), pp. 326, 327.

There is sufficient evidence to support the lower court's decision that the calves were "received for sale on a commission basis." Respondent's undisputed testimony shows that he did not give a bill of sale to Mr. Vukich, Dillon Livestock Auction Company, or anyone else. The market consignment permit, the check-in ticket prepared by the Auction Company as part of their regular course of business, and the original market inspection report and tally all showed title to the livestock in respondent Alfred J. Donich. Further, if there were a sale, as contended by appellant, when the cattle were shipped across county lines from Deer Lodge to Dillon, a transportation permit would have been obtained showing title in the Auction Company. Instead, the market consignment permit was obtained.

The fact that a draft and later a check were given to respondent by the Auction Company, supported only by Mr. Vukich's verbal notice that the cattle "were purchased by me for resale for Dillon Livestock Auction Company Account" does not, in light of the surrounding circumstances, relieve appellant of liability under the bond. For purposes of this case, even

if the draft and check were honored, we would only consider them to be advances, neither of which would change title to the calves. See 35 C.J.S. Factors § 40, pp. 541, 542. Looking at the nature of the draft and check for any other purpose beyond the limited scope of this opinion is not intended.

Concerning the second specification of error, while no argument either written or oral was presented by any of the parties, both briefs concede that if the judgment of the lower court is affirmed as to the respondent, then the third party plaintiff was entitled to judgment against the third party defendant.

The judgment of the district court is affirmed except as to its failure to provide for a judgment for the third party plaintiff. It is therefore returned to the district court to comply with the holding in this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES, concur.