FRANZKE, PLAINTIFF, *v.* FERGUS COUNTY ET AL., DEFENDANTS.

(No. 5,920.)

(Submitted March 26, 1926. Decided April 10, 1926.)

[245 Pac. 962.]

*Injunction—Counties—Sale of County Property—Legislative Direction Controlling—Statutory Construction—Doctrine of Expediency—Statutes—General and Special.*

"Sale"—"Agreement to Sell"—Definition.
  1. A sale, as distinguished from an agreement to sell, is the actual transfer of title from the grantor to the grantee, an agreement to sell being a contract to be performed in the future, which, if fulfilled, results in a sale.

---

1. See 23 R. C. L. 1187.

o

[76 Mont. 150.]

Counties—Sale of County Property—Legislature may Prescribe Mode.
2. A county is merely a subdivision of the state for governmental purposes, and as such is subject to legislative regulation and control; the legislature may within the limitations prescribed by the Constitution, circumscribe or extend the powers to be exercised by a county, and legislative authority to regulate or control the disposition of county property not having been limited by the Constitution, it could properly declare, as it did by sections 4444 and 4465, Revised Codes of 1921, that such property may be sold only under the restrictions and in the manner therein indicated.

Same—County may not Sell County Property on Installment Plan.
3. *Held,* on application for writ of injunction, that a county is without power to enter into an agreement to sell land owned by it, on the installment plan, its power in that regard being limited to an actual sale at public auction and for cash by section 4465 above.

Same—Exercise of Powers—When Legislative Direction Exclusive.
4. Where the legislature has prescribed with particularity the essential steps necessary to be taken by a county in the exercise of a power granted, the statute must be held to exclude any other mode of procedure, under the doctrine *expressio unius est exclusio alterius.*

Same—Exercise of Powers—Statutes—Construction—Doctrine of Expediency Does not Enter into.
5. The fact that an unauthorized mode of procedure contemplated by county authorities in the disposition of county property may be in the best interest of the county is not an admissible argument in favor of upholding the transaction, the doctrine of expediency not entering into the construction of statutes.

Same—Sale of County Property—Statute Controlling.
6. *Held,* that the contention that subdivision 10, of section 4465, above, providing the method to be pursued in selling county property, applies only to a sale of property obtained for purely public purposes but no longer needed for such purposes, and that therefore a ranch held by it in its proprietary capacity and not acquired for a public purpose does not fall within its purview, cannot be sustained.

Statutes—General and Special—When Special Act Controls.
7. Where one Act deals with a subject generally and another with a part of the same subject, the two must be read together and harmonized, if possible, but to the extent of any necessary repugnancy between them, the special statute prevails over the general one.

---

[1] Vendor and Purchaser, 39 **Cyc.,** p. 1300, n. 3.
[2] Counties, 15 **C. J.,** sec. 1, p. 388, n. 5; p. 389, n. 9; sec. 2, p. 391, n. 30 New; sec. 51, p. 419, n. 98; sec. 225, p. 538, n. 53.
[3] Counties, 15 **C. J.,** sec. 107, p. 460, n. 99, 1; sec. 225, p. 538, n. 53
[4] Counties, 15 **C. J.,** sec. 107, p. 460, n. 98; *Expressio unius etc.,* 25 **C. J.,** p. 220, n. 17.
[5] Counties, 15 **C. J.,** sec. 233, p. 541, n. 95.
[6] Counties, 15 **C. J.,** sec. 225, p. 538, n. 53.
[7] Statutes, 36 **Cyc.,** p. 1154, n. 55, 56, 57.

2. Legislative control of counties, see note in 68 **Am. Dec.** 298. See, also, 7 **R. C. L.** 926.
4. See 25 **R. C. L.** 981.
5. See 25 **R. C. L.** 1017.
7. See 25 **R. C. L.** 929.

Original suit for injunction by A. A. Franzke, a taxpayer, against Fergus County and others. Permanent injunction granted.

*Mr. C. W.. Buntin,* for Plaintiff, submitted a brief, and argued the cause orally.

*Mr. 'Enor K. Matson,* County Attorney of Fergus County, *Messrs. Belden & DeKalb,* and *Mr. Merle G. Groene,* for Defendant, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the Court.

The Maury ranch, situated in Fergus county, is owned by that county, but it is not material here to inquire just how this came about. It is sufficient to know that the ranch was not acquired for a public purpose, such as a poor farm or the like, but is held by the county in its proprietary capacity and represents an investment of $40,000. From the record, supplemented by oral admissions of counsel, it appears that the county desires to sell the ranch, but is not able to find a prospective purchaser who is willing to pay as much as $40,000 for it if the entire purchase price must be paid at once. It is able, however, to find a prospective purchaser who is ready, able and willing to contract to purchase the ranch for that amount, pay down at least twelve per cent of the price, and pay the balance in not to exceed ten equal installments, with interest on the deferred payments at six per cent per annum, and agree that the county shall retain the title to the property until the entire purchase price is paid. Confronted by this situation, the board of county commissioners determined to receive offers for the property upon the installment plan and to enter into a contract to sell it upon the most favorable terms obtainable, but not for less than $40,000, and to that end is now publishing a

notice for bids to be received on the twentieth day of this month.

A. A. Franzke, a resident taxpayer, instituted this suit on behalf of himself and all others similarly situated to secure an injunction' restraining the board from proceeding further in the matter, upon the theory that a county cannot dispose of its property in the manner here proposed, and the correctness of that theory is the sole question for solution.

In the notice published by the board, the proposed transac-
[1]    tion is designated a "sale," but it is not such in fact. "Sale is a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." (Sec. 7581, Rev. Codes 1921.) "Transfer is an act of the parties, or of the law, by which the title to property is conveyed from one living person to another" (sec. 6835), and a voluntary transfer is an executed contract (sec. 6836). These sections, with section 4465, Revised Codes of 1921, leave no room for doubt that the term "sale" as used in our Codes implies that title to the thing sold passes immediately. Section 7582, Revised Codes, declares: "The subject of sale must be property, the title to which can be immediately transferred from the seller to the buyer."

As distinguished from a sale, the transaction here contemplated, if consummated, will constitute: (1) An agreement to sell, defined by section 7584, Revised Codes, as follows: "An agreement to sell is a contract by which one engages, for a price, to transfer to another the title to a certain thing," or (2) an agreement to sell and buy, defined by section 7586: "An agreement to sell and buy is a contract by which one engages to transfer the title to a certain thing to another, who engages to accept the same from him and to pay a price therefor." Under either of these latter sections the transaction is one which is frequently but erroneously designated a conditional sale. (*State ex rel. Malin-Yates Co.* v. *Justice of the Peace,* 51 Mont. 133, 149 Pac. 709.)

The distinction between a sale, on the one hand, and an agreement to sell or an agreement to sell and buy, on the other, is recognized by all the authorities. (*Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Wright Land & Investment Co.* v. *Even,* 57 Mont. 1, 186 Pac. 681; Benjamin on Sales (7th ed.), sec. 308.)

In *Ide* v. *Leiser* above, this court said: "There may be, first, a sale of lands; second, an agreement to sell land. * * * The first is the actual transfer of title from grantor to grantee, by appropriate instrument of conveyance. The second is a contract to be performed in the future, and, if fulfilled, results in a sale. It is a preliminary to a sale, and is not the sale. Breaches, rescission or release may occur, by which the contemplated sale never takes place. * * * A present conveyance of lands is an executed contract. An agreement to sell is an executory contract."

In 1 Williston on Sales, 2d ed., section 2, the author says: "The most fundamental distinction in the law of sales is between a contract to sell in the future and a present sale. The distinction is often expressed by the terms executory and executed sales. Whether a bargain between parties is a contract to sell or an actual sale depends upon whether the property in the goods is transferred. If it is transferred there is a sale, an executed sale, even though the price be not paid. Conversely, though the price be paid there is but a contract to sell (not very happily called an executory sale) if the property in the goods has not passed."

The board does not intend to transfer the Maury ranch on the 20th of this month. It does not intend to sell it at that time, but it does intend that the agreement then made shall ripen into a sale at the conclusion of the contract period; in other words, a sale is the ultimate purpose sought to be accomplished, and therefore the inquiry: May a county dispose of its property in the manner contemplated here?

A county is merely a subdivision of the state for govern-
[2]   mental purposes, and as such is subject to legislative

regulation and control, except to the extent that the Constitution has restricted the law-making body. Within those limitations the legislature may circumscribe or extend the powers to be exercised by a county as it sees fit (*Edwards v. Lewis and Clark County,* 53 Mont. 359, 165 Pac. 297), and since our Constitution has not limited the authority of the legislature to regulate or control the disposition of county property, the right of the legislature to say that such property may be sold only under the restrictions and in the manner indicated by the statutes cannot be questioned; for while a county is a body politic and corporate, whose business, generally, is transacted by its board of county commissioners, it has only such powers as are conferred by law, either expressly or by necessary implication. (See 4441, Rev. Codes, 1921; *Independent Publishing Co.* v. *County of Lewis and Clarke,* 30 Mont. 83, 75 Pac. 860; *Hersey* v. *Neilson,* 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30; *Bignell* v. *Cummins,* 69 Mont. 294, 36 A. L. R. 634, 222 Pac. 797.)

It is suggested by defendants that a liberal construction of [3] our statutes will justify the action now sought to be taken; but, if any doubt could exist as to the intention of the lawmakers with respect to the subject, that doubt is dispelled by a reference to the history of the pertinent legislation.

Our first territorial legislative assembly enacted a statute which conferred upon every board of county commissioners power "to sell and convey any real or personal estate owned by the county and make such order respecting the same as may be deemed conducive to the interests of the inhabitants" (Bannack Statutes, p. 499, sec. 1); and that Act continued in force until 1895 (sec. 744, Fifth Div., Compiled Statutes 1887). Under that Act, very broad discretion was lodged in the board, and in the absence of fraud a sale upon almost any terms, doubtless, would have been sustained. But with the adoption of the Codes of 1895, a different policy was inaugurated. The very liberal statute which had been in force for thirty years was superseded by one copied, practically ver-

batim, from section 4046, California Political Code of 1872. Section 4230 of our Political Code of 1895 provided:

"The board of county commissioners has jurisdiction and power under such limitations and restrictions as are prescribed by law. * * * '10. To sell at public auction at the courthouse door, after thirty days' previous notice given by publication in a newspaper of the county, or posted in five public places of the county, and convey to the highest bidder for cash any property, real or personal, belonging to the county, paying the proceeds into the county treasury for the use of the county. * * * '25. To perform all other acts and things required by law not in this title enumerated, or which may be necessary to the full discharge of the duties of the chief executive authority of the county government."

At the same time section 4193, Political Code of 1895, was enacted, which conferred upon a county power: "'2. To purchase and hold lands within its limits. 3. To make such contracts and purchase and hold such personal property as may be necessary to the exercise of its powers. 4. To make such orders for the disposition or use of its property as the interests of its inhabitants require."

These provisions have continued in force to the present time. Section 4230 above is now section 4465, Revised Codes of 1921, and although that section was amended by Chapter 95, Laws of 1923, neither subdivision 10 nor subdivision 25 was changed in any respect. Section 4193 above is now section 4444, Revised Codes of 1921.

So far, then, as the question now before us is concerned, sections 4444 and 4465, above, constitute the charter of a county's powers, and to them we must look for evidence of the authority which Fergus county now seeks to exercise, and the county must justify its proposed action, if at all, by reference to those statutes. (*Stange* v. *Esval*, 67 Mont. 301, 215 Pac. 807.) If the board should enter into a contract which the law does not authorize it to make, such a contract would be void (*Lebcher* v. *Board of County Commissioners*, 9 Mont.

315, 23 Pac. 713), and the expense incurred would be an unwarranted use of public funds, which might be restrained at the suit of any taxpayer (*Stange* v. *Esval,* above).

It is the general rule that whenever a power is conferred upon the board of county commissioners, but the mode in which the authority is to be exercised is not indicated, the board in its discretion may select any appropriate mode or course of procedure. (*Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286.)    This rule might have been invoked in a case of this character arising prior to July 1, 1895, but the insuperable difficulty which confronts Fergus county is that our present statutes do prescribe the mode of procedure and the terms and conditions which must be observed in order to make a valid sale of county property.    By the express terms of subdivision 10 of section 4465 above, a sale of county property can be made only (1) at public auction, (2) at the courthouse door, (3) after thirty days' previous notice, (4) to the highest bidder, (5) for cash.    Since the legislature has seen fit to indicate with particularity the essential steps necessary to be taken, [4] and has prescribed the precise mode of procedure, the statute must be held to exclude any other.    *Expressio unius est exclusio alterius.*

To illustrate the difficulty which now confronts the county: Let us assume that on the twentieth day of this month the board enters into a contract to sell the Maury ranch to John Doe for $40,000; that the prospective purchaser pays down $4,800 and agrees to pay the balance in ten equal annual installments, with interest on the deferred payments at six per cent per annum, payable annually, the county to retain title until the entire purchase price is paid, and that the proposed purchaser makes the payments just as in that contract provided.    The county will not have made a sale of the ranch, but it will have bound itself, if bound at all, to sell to John Doe and convey the title to him ten years hence.    When April 20, 1936, arrives, will the county advertise for bids for the property, offer it at public auction at the courthouse door, and

if Richard Roe then offers $60,000 in cash, the highest bid, will the county sell the ranch to him? Not if it has any regard for its contract. If the contract is effective for any purpose, it will convey the property to John Doe for $40,000, and thus it will have evaded the plain language of the statute.

The fact that the contemplated action may be in the best [5] interest of the county is not an admissible argument. The doctrine of expediency does not enter into the construction of statutes.

From the history of the legislation it is reasonably plain that since July 1, 1895, it has been the policy of the law that a county may sell its property only in the manner and upon the terms expressed in subdivision 10 of section 4465; in other words, the sale must be made at the conclusion of the thirty days' notice, and it must be at public auction at the courthouse door, for cash, and to the highest bidder, to whom the property thereupon must be conveyed. If the statute unnecessarily and unreasonably restricts the board in the sale of county property, relief must be sought from the legislative branch of government. We must assume that the legislature of 1895 had in view a definite purpose in abandoning the statute which had theretofore controlled the sale of county property and in substituting the present statute which so greatly restricts the board. Whatever reason may have prompted it, its intention is made plain, and the courts may not sanction a violation of the law, however advantageous such a course might be.

It is suggested by the defendants that the provisions of [6] subdivision 10 of section 4465 apply only to a sale of property obtained for purely public purposes, but no longer needed for such purposes; but the language of the statute does not admit of any such restricted meaning. The language of the section is ''any property, real or personal, belonging to the county,'' and this must be held to include the Maury ranch now owned by the county.

Neither is it admissible to say that under the comprehensive language employed in section 4444 and subdivision 25 of section 4465 a county may enter into a contract to sell its property and ultimately sell it, without complying with the requirements of subdivision 10 above. Since neither of those acts provides a plan of procedure, and neither contains any restrictions, except that the disposition of the property must be such as the interests of the inhabitants require, if they authorize the action now sought to be taken, the board may proceed in any appropriate manner it chooses to adopt, contract without giving notice, with one who is not the highest bidder, and agree to sell on the installment plan instead of for cash. Such a construction of the Act would nullify the provisions of subdivision 10, section 4465, and restore the statute which was in force prior to July 1, 1895, although that statute was repealed by the adoption of the Codes. (Sec. 17, Political Code of 1895.)

The best that can be said of the provisions of section 4444 [7] and subdivision 25 is that they treat of the disposition of county property generally; but subdivision 10 is a special provision which deals with a particular subject—the sale of county property—and in every instance where the subject is the sale of county property, whether immediately or ultimately, the provisions of subdivision 10 control. It is a rule of universal application in the construction of statutes that "where one Act deals with a subject generally and another with a part of the same subject, the two are to be read together and harmonized if possible, but, to the extent of any necessary repugnancy between them, the special statute prevails over the general one." (*Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454; *Reagan* v. *Boyd,* 59 Mont. 453, 197 Pac. 832; *Daley* v. *Torrey,* 71 Mont. 513, 230 Pac. 782.)

It is our conclusion that the county is without authority to dispose of its property in the manner proposed and that the contemplated contract, if entered into, would be void.

A permanent injunction will issue in conformity with the prayer of the complaint.

*Writ issued.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.