NEUBERT FLOM AND JOSEPHINE FLOM, AS JOINT TENANTS, PLAINTIFFS AND RESPONDENTS, *v.* THE *UNKNOWN* HEIRS OF CHARLES E. CONRAD, DECEASED, ET AL., DEFENDANTS, AND THE CITY OF FORT BENTON, MONTANA, DEFENDANT AND APPELLANT.

No. 9612.
Submitted November 14, 1957. Decided December 20, 1957.
319 Pac. (2d) 499.

Mr. G. C. Schmidt, Jr., Fort Benton, Messrs. Jardine, Stephenson, Blewett & Weaver, Great Falls, for appellant.

Mr. Dola N. Wilson, Jr., Fort Benton, for respondent.

Mr. Schmidt, Mr. John D. Stephenson and Mr. Wilson argued orally.

THE HON. LeROY L. McKINNON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY.

This action involves title to certain lots in the City of Fort Benton.

576

The action was commenced by the respondents, plaintiffs below, in the usual form of an action to quiet title. The appellant, City of Fort Benton, defendant below, was the only defendant to appear or contest the complaint. The matter was submitted on an agreed statement of facts, and decree was entered quieting title to the real estate in the respondents.

Briefly, the facts are:

Chouteau County, Montana, acquired tax deeds to the property involved prior to the date of any deed herein considered.

In 1933 the Board of County Commissioners of Chouteau County, Montana, hereinafter referred to as the Board, appraised numerous lots, including 1,381 lots described in the deed entered as Exhibit "A"; that the said 1,381 lots were appraised in general at $1 per lot, but the total appraised value of the 1,381 lots came to the sum of $1,527; that the appraised lots were duly offered for sale, and some lots were sold, but no offer was received on any of the lots involved in this controversy.

The minutes of the Board do not show any other appraisal of any of the lots involved other than the 1,381 lots as set out above.

The minutes of the city council of the City of Fort Benton for December 2, 1935, contain the following entry:

"Due to a number of small shacks and houses being moved into the City of Fort Benton, and for sanitary conditions, the City Council authorized the purchase of a number of lots from Chouteau County, Montana, for the amount of $25.00 cash, and $204.07 to pay Fort Benton Special Improvement Tax; the total amount being in the sum of $229.07." (Description of lots set out in Exhibit "A".)

The minutes of the Board for December 7, 1935, contain the following entry:

"It appearing that the County of Chouteau is now the record owner of a great number of vacant lots located in the Town of Fort Benton; the County having received title through Tax Deed Proceedings at prior dates, and facts having been pre-

sented to the Board that the proper officers of the City of Fort Benton can handle and dispose of a great number of these lots to better advantage due to certain rules and regulations adopted by the City Council as to moving buildings from the Country and sanitary regulations, on motion made and carried, the Board sold at private sale to the City of Fort Benton, the following lots and parcels of land:'' (Description of lots set out in Exhibit ''A''.)

The official records of the Board do not show any other payments made by the City of Fort Benton to the County of Chouteau as the purchase price of said lots except the amount referred to in the minutes of the city council.

Exhibit ''A'', being the deed from Chouteau County to the City of Fort Benton, contains this statement:

''Whereas, the Board of County Commissioners of said County, by an Order duly made and entered upon the minutes of the proceedings of said Board, on various dates, appraised said property at the value of Twenty-five and No/100 and other valuable considerations Dollars ($25.00); and that the fair market value of said property is not in excess of One Hundred and No/100 Dollars ($100.00); and

''Whereas, thereafter, to-wit; on the date hereof, said City of Fort Benton, the party of the second part, offered and agreed to purchase from the said party of the first part the real estate hereinafter described, for the sum of Twenty-five and no/100 and other valuable consideration Dollars ($25.00) lawful money of the United States of America, and said sum being the highest offer, and that being the highest sum offered for the hereinafter described property, which said sum is not less than ninety per cent of the last appraised value of said real estate, and

''Whereas, the said Party of the Second Part thereupon paid to Chouteau County the sum so offered by it aforesaid.''

Exhibit ''B'', being the second deed from Chouteau County to the City of Fort Benton, contains this statement:

''Whereas, The Board of County Commissioners of said Coun-

ty, by an order duly made and entered upon the minutes of the proceedings of said Board, on the 9th day of October, A.D. 1936 appraised said property at the value of One and no/100 dollars ($1.00); and that the fair market value of said property is not in excess of One Hundred and no/100 Dollars ($100.00); and

"Whereas, thereafter, to-wit; on the date hereof, said City of Fort Benton, the party of the second part, offered and agreed to purchase from the said party of the first part the real estate hereinafter described, for the sum of One and no/100 Dollars ($1.00) lawful money of the United States of America, and said sum being the highest offer, and that being the highest sum offered for the hereinafter described property, which said sum is not less than ninety per cent. of the last appraised value of said real estate, and

"Whereas, the said Party of the Second Part thereupon paid to Chouteau County the sum so offered by it aforesaid."

The minutes of the city council of the City of Fort Benton show that the first lots, of those here involved, sold by the City of Fort Benton, were two lots sold for $10 and two lots sold for $3; that thereafter for a considerable period of time a number of lots were sold at $5 per lot; that thereafter the price was set at $15 per lot, and in the past two years lots have been sold at that price.

The minutes of the Board for June 3, 1952, show a resolution to sell the lots here involved to the respondents upon the application of the latter; that the lots involved be reappraised for $3 per lot; that a deed was accordingly made to the respondents, in evidence herein as Exhibit "C" dated June 3, 1952.

The first deed to the City was recorded December 23, 1935; the second was recorded December 15, 1936; and the deed to the respondents was recorded June 10, 1952.

The appellant has set out ten specifications of error. The respondents have presented two questions which go to the validity of the deeds to the City of Fort Benton. For the sake of

brevity the matter will be dealt with upon the questions of the respondents.

First, it is urged the City of Fort Benton does not have power to take conveyances, to hold, or to sell the real estate involved in this action.

Respondents contend that a careful examination of the stipulated facts shows beyond question that the matter of the number of small shacks and houses being moved into the City of Fort Benton, and the sanitary conditions are shown to have been handled by rules and regulations then in effect, and the real purpose of attempting to take conveyance was that the proper officers of the City of Fort Benton can handle and *dispose* of a great number of these lots to better advantage than the County; that thus no question of police purpose or sanitary necessity is presented, the avowed and stated purpose being solely to dispose of said lots by engaging in the real estate business.

With that interpretation this court is unable to agree. The ▇▇▇▇ language "can handle and dispose of * * * to better advantage" appearing in the minutes of the Board, would seem to be the sole direct evidence favoring such an interpretation. The quoted words are followed by "due to certain rules and regulations adopted by the City Council as to moving buildings from the Country and sanitary regulations * * *" Taking the statement in its entirety, the least strained interpretation would indicate that the purchase of the lots was for governmental purposes. As corroborating the theory of respondents, they point out that the City later sold lots at varying prices, much higher than the purchase price paid to the County. The agreed statement of facts gives no clue whatever as to the time lapse between purchase by the City and resale of the lots; no mention is made of improvements or lack thereof. For this court to attach significance to the price difference would be to indulge in a completely unwarranted flight of fancy. There is no indication whatever that the County was in any way induced to assist the City to engage in the real estate business.

On the contrary, the official records and the deeds themselves, indicate that the property was advertised for sale and no offer received. For the foregoing reasons, there is no doubt that the City had and has power, under R.C.M. 1947, section 11-104, and its antecedents, to take conveyances, to hold, or to sell the real estate involved in this action.

Second, it is urged the conveyances covering the property are absolutely void under the statutes of the State of Montana.

Respondents contend that the statutes of the State of Montana governing the disposition of tax lands were not followed in the transactions in issue, and cite the following sections:

R.C.M. 1947, section 84-4190, provides: "* * * no sale shall be made for a price less than the fair market value thereof, as determined and fixed by the board of county commissioners prior to making the order of sale, which value shall be stated in the notice of sale."

R.C.M. 1947, section 84-4193, provides: "In the event any of said lands are not sold at such public sale the county commissioners may at any time either again appraise, advertise, and offer the same at public auction or sell the same at private sale at the best price obtainable at not less than ninety per cent (90%) of the last appraised value and on such terms as may be agreed upon * * *"

The argument advanced is that the deeds to the City were absolutely void and therefore could not be validated. Again this court must differ with the interpretation of respondents. The Board had the power and the authority to dispose of and convey the real estate in question. However, such authority may be exercised only in the method provided by statute. Franzke v. Fergus County, 76 Mont. 150, 156-157, 245 Pac. 962. If the Board failed to follow the statutory procedure governing sales of county land the deeds are absolutely void. Franzke v. Fergus County, supra. In line with the authority in the Franzke case this court is here faced with two questions: (1) Did the statute provide a method or procedure for selling public lands? (2) Did the Board follow that procedure?

R.C.M. 1935, section 2235, the statute in effect when the Board executed the deeds to the City, provided: "If the property real or personal of which the county has become possessed, be of a value of less than one hundred dollars ($100.00), it will be sold in accordance with the provisions of section 4465.9."

R.C.M. 1935, section 4465.9, now R.C.M. 1947, section 16-1009, provided: "The board of county commissioners of the several counties in this state shall have power to sell any property, real or personal  *  *  *  In all sales of property of a value in excess of one hundred ($100.00) dollars, there must before any sale be an appraisal thereof by the board  *  *  * If the property to be sold is reasonably of a value of less than one hundred ($100.00) dollars, sale thereof may be had at either public or private sale, as in the discretion of the board of county commissioners, may appear to be to the best interests of the county."

In addition it should be noted that respondents agree that the above-quoted sections were the applicable law at the time the two deeds from the County to the City were executed.

It is apparent that the statutes above-quoted do provide a ▮ procedure for the sale of property of a value less than $100. The procedure provided for is as follows: (1) An appraisal of the property must be had before sale; (2) The sale may be either public or private; and (3) The latter provision is within the discretion of the county commissioners. Therefore the question remains as to whether the Board followed the above procedure.

In this case, the deeds conveying the property to the City of ▮ Fort Benton were of record for some sixteen or seventeen years when the respondents made application to purchase the lots in question from the County. The respondents walked into the situation with their eyes wide open, and they stand now in exactly the same position as the County of Chouteau, the vendor.

R.C.M. 1947, section 93-1301-6, sets out conclusive presump-

tions: "The following presumptions, and no others, are deemed conclusive: * * *

"2. The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration."

The deeds from the County to the City both contain statements to the effect that the property conveyed was appraised; that the price for which it was sold was not less than ninety percent of the last appraised value; and that this was the highest offer obtained. It is evident from the above recitations that the Board followed the statutory procedure in selling the lots in question. First, the deeds recite there was an appraisal before sale; second, it was a private sale; third, the latter provision was within the discretion of the commissioners; and fourth, the lots were sold to the highest bidder. Since the County followed the statutory procedure it follows that the deeds from the Board to the City were valid to convey the lots in question. Since the lots were conveyed prior to the sale to the respondents, it follows that the deed to the respondents was void for the very apparent reason the County no longer owned the lots.

Respondents, however, contend that each lot may not be separately valued, likening the individual lots to the kernels in a bushel of grain. The analogy immediately breaks down, for each lot is generally regarded as a separate entity, and our assessment statutes so recognize. R.C.M. 1947, section 84-429.

For the foregoing reasons, title to the lots here in question rests in the City of Fort Benton, Montana, and the case is remanded to the District Court with directions to enter a decree in accordance herewith.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES, ANGSTMAN, and ADAIR, concur.