No. 14522

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

DAVID NORMAN,

Plaintiff and Respondent,

-vs-

THE STATE OF MONTANA; THE STATE
HIGHWAY COMMISSION OF THE STATE
OF MONTANA; et al.,

Defendant and Appellant,
and

WILLIAM GOZDEN,

Defendant and Respondent.

Appeal from: District Court of the Second Judicial District,
Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

For Appellants:

N. A. Rotering, James R. Beck and Donald A. Douglas, Helena,
Montana
Donald A. Douglas argued, Helena, Montana

For Respondents:

Corette, Smith, Dean, Pohlman and Allen, Butte, Montana
Kendrick Smith argued, Butte, Montana

McCaffery and Peterson, Butte, Montana
William D. Murray, Jr., argued, Butte, Montana

Submitted: March 20, 1979
Decided: JUN 13 1979

Filed: JUN 13 1979

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The State of Montana appeals from a judgment and order dated June 8, 1978, of the District Court, Second Judicial District, Silver Bow County sitting without a jury. The judgment and order quieted title to a certain parcel of land in David Norman and awarded damages against the State to William Gozden.

On September 18, 1946, the State of Montana purchased a certain parcel of land in Butte, Montana, from William and Paul Gozden. The State Highway Department in 1974 decided to sell this parcel containing 5.3 acres as excess highway lands and published a notice to that effect asking for bids. Envelopes presumably containing bids were received by the Department including one from respondent Gozden, but the Department decided to withdraw the parcel of land from sale and returned the "bids" unopened.

In February 1975, the State, acting through the Department of Highways, again sought to dispose of this same excess land and prepared an advertising copy for publication in the Montana Standard, Silver Bow County, Montana, and a letter of instruction for such publication dated February 6, 1975. This copy and letter were placed in the regular Department of Highways' office channels for mailing to the Montana Standard in the regular course of the Department's business. This copy, however, was never published by the newspaper.

No bids were received by the Department of Highways by the time specified in the notice and the official in charge of excess lands, unaware no publication was made, assumed

the lack of bids was due to a doubling of appraised value from 1974 to 1975. Subsequently, in the summer of 1975, respondent Norman was advised by another party that the land was available for sale. Norman visited the local office of the Department of Highways for information.

As a result of his inquiries Norman wrote a letter to the official responsible for the sale of excess lands offering to purchase the parcel in question for $5,962.50 which was 90% of the 1975 appraised value of $6,625.00. Norman was advised his offer would be considered. Thereafter, in September 1975, the offer was accepted and Norman secured a quit claim deed to the property from the State, paid the $5,962.50 and recorded the deed. He also erected a fence around the property. At no time prior to the sale did the officials involved ascertain whether in fact publication had been made as required by statute before a private sale may be consummated. Testimony at trial indicated the officials responsible for sale of excess lands customarily did not wait for proof of publication before sale of lands.

In September 1976, the Department of Highways received a letter from an individual questioning the validity of the sale. The Department then inquired of the Montana Standard whether publication had been made. Receiving no answer, the Department searched the back issues of the newspaper and determined no publication had been made. Thereupon, in February 1977, the Department tendered to Norman the purchase price previously received and offered to pay him the cost of the fence that had been erected. Norman refused the offer and instituted this quiet title action.

Norman named as defendants the State of Montana and William Gozden, original owner of the property. Norman claimed in the alternative, to quiet title to the property in question

-3-

in himself, to estop the State of Montana from denying the validity of the sale, or to require the State to pay damages of $26,600 to Norman for its failure to convey the property to him. Defendant Gozden answered and crossclaimed against the State for $30,000 damages alleged to have arisen from the State's negligence. Gozden claimed the State's negligence in not ascertaining whether publication had been made, prevented him from exercising his right pursuant to statute as original owner to reacquire the property.

At the trial before the Hon. James Freebourn, sitting without a jury, the testimony elicited the facts set forth above. In addition, Norman testified he had been offered $26,600 for the land approximately three weeks after notification by the State that the sale was invalid. Gozden also testified, based upon his experience in land sales in the area, the property was worth $6,000 per acre in 1978.

The court entered its findings, conclusions, judgment, and order on June 8, 1978. The court concluded the State was estopped from questioning the title of Norman and quieted that title in Norman. The court further concluded the State was negligent in not following the procedures for sale as outlined by statute. The court concluded with respect to Gozden that the State's negligence had precluded him from exercising his statutory rights to reacquire the property and awarded damages in the amount of $25,837.50. (The court arrived at this figure by deducting from the total price of 5.3 acres at $6,000 per acre, $31,800, the amount Gozden would have had to pay to reacquire the property, $5,962.50.)

The issues raised by this appeal may be framed as follows.

1. Was the District Court correct as a matter of law in concluding appellant State of Montana was estopped from

-4-

denying the validity of its deed to respondent Norman?

2. Are the findings and conclusions of the District Court supported by substantial, credible evidence?

3. If the deed is held valid as to these parties, is respondent Gozden prevented by the prohibition against retroactivity from asserting his right as a prior owner to reacquire the property?

With respect to the first issue, the State contends the constitutional and statutory framework for the sale of excess lands established publication of notice of an intended sale, a condition precedent to the grant of power to sell. Without such publication, appellant argues there was no authority to sell and the "sale" was therefore void. The State then asserts it cannot be estopped to deny the deed because its agents had no authority to make the "sale". In response, Norman asserts the State in disposing of excess lands was acting in a proprietary capacity and is therefore subject to estoppel both by deed and on equitable grounds. Therefore, Norman argues, the State is precluded from denying the validity of its deed to him and from asserting any right or title in derogation of the deed.

The question presented to this Court by the first issue is whether the State may be estopped, either by deed or equitably from denying the validity of its deed to respondent Norman. If this Court decides the State may not be estopped then we need not consider the other issues raised.

Estoppel by deed precludes one party to a deed from asserting as against the other party any right or title in derogation of the deed, or from denying the truth of any material facts asserted in it. 28 Am.Jur.2d Estoppel and Waiver §4, p. 602. Equitable estoppel is a term applied to a situation

-5-

where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. 28 Am.Jur.2d Estoppel and Waiver §27, p. 627. Generally, the State, when acting in a proprietary capacity as it was here, is subject to either doctrine. Strand v. State (1943), 16 Wash. 2d 107, 132 P.2d 1011, 1016; People v. Gustafson (1942), 53 Cal. App. 2d 230, 127 P.2d 627, 634; 31 C.J.S. Estoppel §§49, 140, pp. 354, 695. However, it is widely recognized that regardless whether acting in a governmental or proprietary capacity, a state cannot be estopped by the unauthorized acts of its officers or agents. Murphy v. State (1947), 65 Ariz. 338, 181 P.2d 336, 355; Strand v. State, 132 P.2d at 1017. See, Utah Power & Light Co. v. United States (1916), 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791. Thus, this Court must decide whether the actions of the State in this cause were unauthorized or merely improper.

The 1972 Montana Constitution provides in Article X, §11, that all lands of the State acquired by grant shall be public lands held in trust for the people. The section further provides that no such land shall be disposed of except pursuant to the statutes providing for such disposition. The section also indicates "full market value" should be received for the property; this Court has indicated "full market value" as used in this provision means actual value. Rider v. Cooney (1933), 94 Mont. 295, 23 P.2d 261. The lands in question here were acquired by the State in 1946 by purchase from William and Paul Gozden and therefore fall within the ambit of the above constitutional provision. See section 70-1-507 MCA (formerly section 67-1508, R.C.M. 1947.)

To effectuate the policy respecting lands held in trust for the people announced by Article X, §11, the legislature enacted, with respect to State lands designated as excess

highway lands, sections 60-4-202, -203, -204, -205 MCA (formerly sections 32-3910, -3911, -3912, -3913, R.C.M. 1947).

These sections provide for first a public sale and then, if necessary, a private sale. The Department of Highways must publish notice of the intended sale stating a value of the property based upon an appraisal made within three months of the date of sale. Section 60-4-203 MCA. The original owner or his successor in interest is given the opportunity to meet the highest bid received pursuant to the published notice. Section 60-4-204 MCA. If "after proper notice is published" no bid is received nor an offer by the original owner is made, the Department may sell the property at a private sale. Section 60-4-205 MCA.

No Montana cases directly address the question presented, namely, whether the State's action here was unauthorized or merely improper; however, in Franzke v. Fergus County (1926), 76 Mont. 150, 245 P. 962, an analogous situation was at issue. There the county commissioners attempted to sell county property via an executory contract. Although authorized by statute to sell county lands, the mode the commissioners chose did not conform exactly to the procedure provided by the statute. This Court held the county was without authority to sell the land in such a manner and the contract would therefore be void, stating, "since the Legislature has seen fit to indicate with particularity the essential steps necessary to be taken, and has prescribed the precise mode of procedure, the statute must be held to exclude any other." 245 P. at 964.

In Murphy v. State (1947), 65 Ariz. 338, 181 P.2d 336, the Arizona Court was faced with a problem similar to the one presented by this appeal. In 1940, the State exchanged lands with Murphy without regard to provisions of Arizona's

Enabling Act, constitution and statutes requiring notice, bidding and amount of land that may be conveyed to an individual. When the State later sued to cancel the deeds, one of the arguments opposing its suit was that the doctrine of estoppel prevented the State from denying the validity of the transaction and resulting deeds. The Arizona Supreme Court disagreed, stating:

> "The state is not estopped to deny its deed against a bona fide mortgagee of its grantee where its officers were not authorized by law in the first to deed away its land and, as in this case, were positively prohibited from doing so without complying with the provisions of the [Enabling Act] and the Constitution." 181 P.2d at 355-356. (Emphasis added.)

See, Penner v. State (Okla. 1955), 302 P.2d 144, 150.

The Montana Constitution unequivocally states that no lands shall be disposed of without complying with the appropriate statutory provisions. Those provisions require publication of notice before any sale is consummated. We conclude therefore that not having complied with the statute, the State through its Department of Highways, was without authority to make the sale and cannot be estopped from denying the validity of the deed. Franzke, supra; Murphy, supra; Strand v. State, 132 P.2d at 1017. See also, Utah Power & Light Co. v. United States, 243 U.S. at 409; Walsonavich v. United States (3rd Cir. 1964), 335 F.2d 96, 101; Stone v. United States (8th Cir. 1961), 286 F.2d 56, 59; Weatherly v. Jackson (1934), 123 Tex. 213, 71 S.W.2d 259, 266. Because there was no authority to make the sale, the resulting deed was void. Franzke, 245 P. at 965.

We recognize it was the negligence of the State's agents that caused the situation which gave rise to this appeal. However, the interest we seek to protect is that of the citizens

-8-

of this State to receive the highest value from the sale of the lands their State government holds in trust for them. Strict compliance with the constitutional and statutory provisions relating to those lands is the best mode to insure that protection. It is generally conceded that while estoppel may be effected against State government, it may not be asserted where it would interfere with the protection of the public's interest in lands. People v. Bradford (1939), 372 Ill. 63, 22 N.E.2d 691; 28 Am.Jur.2d Estoppel and Waiver §122, p. 782. The United States Supreme Court has indicated that the government's efforts to enforce and maintain a policy respecting lands held in trust for the people stand on a different plane from an ordinary suit to regain title or remove a cloud upon it. Utah Power and Light Co., 243 U.S. at 409.

Because we conclude the State was without authority to issue this deed and thus it is void, we need not consider the remaining issues of this appeal. The judgment of the District Court quieting title to this land in David Norman is reversed as is the injunction against the State and William Gozden enjoining them from asserting any claim or interest in this real property. The award of damages to William Gozden is also reversed. Because the sale and deed were void, Gozden has suffered no actual damage and can now assert his interest under the statute as a prior owner should the land be again put up for sale. The State of Montana is directed to tender again the purchase price of the property paid by Norman plus the cost of any improvements upon the land to the date of this opinion to David Norman. In addition, because its negligence has caused Norman to be without the use of the amount of his purchase price for almost five years, and because it is regaining property currently worth over $31,000, the State is directed to

pay, pursuant to our authority as stated in section 3-2-204 MCA (formerly section 93-216, R.C.M. 1947), interest upon the sum of $5,962.50 at 6% per annum from September 16, 1975 until the date of this opinion.

Judgment reversed and remanded to the District Court with instructions to enter judgment according to this opinion. Because of the circumstances under which this case arose, we award costs on appeal to respondents Norman and Gozden against the State.

_____
                Justice

We Concur:


_____
        Chief Justice


_____


_____


_____
                Justices